T. L. Elvins, *et ux.*, and W. H. Beckham, as Trustee, v. H. F. Seestedt and Lucy M. Seestedt, suing by her next friend, H. F. Seestedt.

193 So. 54
Division A
Opinion Filed January 5, 1940
Rehearing Denied January 25, 1940

*Walsh & Ellis,* for Appellants;

*Peters & Kemp,* for Appellees.

BUFORD, J.—Amended bill of complaint was filed in which was alleged, *inter alia:*

"That heretofore, to-wit, on November 20, 1933, the defendant Ethyl Winifred Elvins acquired by warranty deed of that date from J. H. Henderson and Cecy Doolin Henderson, his wife, that certain real property situate, lying and being in the City of Miami, Dade County, Florida, and particularly described as follows:

"Lots eleven (11) and twelve (12) of Block 48 south, City of Miami, according to plat thereof recorded in Plat Book B, at page 41, of the Public Records of Dade County, Florida.

"That the consideration paid for said described property and the conveyance thereof to the said defendant, Ethyl Winifred Elvins was furnished by the plaintiffs and the defendants, T. L. Elvins and Ethyl Winifred Elvins, in the proportion of two-fifths of said consideration by the plaintiff and three-fifths thereof by said defendants, T. L. Elvins and Ethyl Winifred Elvins.

"That thereafter, to-wit, on October 23, 1935, the said defendant Ethyl Winifred Elvins, being joined by her husband, the defendant, T. L. Elvins, by deed of that date, conveyed the fee simple title to the said described property to the defendant, W. H. Beckham, as Trustee for Plaintiffs and the said Defendants, T. L. Elvins, and Ethyl Winifred Elvins, said deed having been recorded on November 10, 1937, in Deed Book 1845 at page 194 of the Public Records of Dade County, Florida; that said property was conveyed by the said Ethyl Winifred Elvins and her said husband, T. L. Elvins, pursuant to an understanding and agreement between plaintiffs and said defendants, Ethyl Winifred Elvins and T. L. Elvins, that the said defendant, W. J. Beckham, as Trustee should take and hold said property as trustee for these plaintiffs and the said defendants, Ethyl Winifred Elvins and T. L. Elvins.

"That, thereafter, to-with on October 23, 1935, the said defendant W. H. Beckham, as Trustee, did make, execute and deliver to these plaintiffs and to the defendants, T. L. Elvins and Ethyl Winifred Elvins, a Declaration of Trust wherein and whereby the said defendant, W. H. Beckham, as Trustee, did acknowledge and declare that he stood seized

of said described property as Trustee for these plaintiffs and the said defendants, T. L. Elvins and Ethyl Winifred Elvins, in the proportion of an undivided two-fifths interest in said property as Trustee for these plaintiffs and in the proportion of an undivided three-fifths interest in said property for the defendants, T. L. Elvins and Ethyl Winifred Elvins; a copy of said Declaration of Trust is hereto attached, marked Exhibit 'A' and made a part hereof to all intents and purposes as though the same were fully and at length incorporated in this amended bill of complaint."

The bill then alleges that by reason of the matters stated Beckham as Trustee became repository of the legal title to the property as naked Trustee; that the plaintiffs and the defendants Elvins became and are the only persons having a beneficial interest therein and that they are in equity tenants in common; that plaintiffs, being desirous of disposing of this undivided interest in the property, applied to Beckham as Trustee, to convey such undivided interest to plaintiffs; that Beckham as Trustee declined to so convey without the consent of the Elvins; that plaintiff applied to Elvins for such consent and that the defendants Elvins declined, failed and refused to consent thereto; that plaintiffs are desirous of a partition of the involved property between the parties according to their respective alleged interests or, in case the property cannot be divided and partitioned without material injury to the interest of the parties therein, that same be sold and the proceeds, after payment of costs and attorneys fees, be pro-rated, according to interest, between the parties.

The prayer was for the relief suggested, *supra.*

Attached to and made a part of the bill of complaint was the declaration of trust above mentioned. It was:

"This Declaration of Trust entered into this the 23rd day of October, A. D. 1935, between W. H. BECKHAM, Miami, Dade County, Florida, as party of the first part, and Ethyl Winifred Elvins and T. L. Elvins, her husband, and H. F. Seestedt and Lucy Seestedt, his wife, as parties of the second part.

"WITNESSETH; that whereas there has been deeded to the said W. H. Beckham the property hereinafter described, as trustee and it is now desired by the said W. H. Beckham to execute a Declaration of Trust reciting the interests of the parties in said property and the details and conditions under which the same shall be held, controlled and disposed of by the said W. H. Beckham as such trustee. Now, therefore, this Declaration of Trust.

"WITNESSETH, that for and in consideration of the sum of Ten Dollars and other valuable consideration, the receipt of which is hereby acknowledged, the said W. H. Beckham does hereby admit, acknowledge and declare that he holds as Trustee in the proportion of three-fifths to said Ethyl Winifred Elvins and T. L. Elvins, her husband, and in the proportion of two-fifths in favor of H. F. Seestedt and Lucy M. Seestedt, his wife, the following described real estate, to-wit:

"All of lots Eleven (11) and Twelve (12) of Block 48 South, City of Miami, as recorded in Plat Book____, page____, of the Public Records of Dade County, Florida.

"Said W. H. Beckham does further declare that he will own, possess and administer the same only in keeping with the interests of the parties, and will not make any sale or dispose of the same without the agreement of the parties above named as beneficiaries of said trust and that he will truly account to the said parties for any income or receipts derived therefrom, and truly and faithfully administer the same as trustee for the purposes expressed and for no other.

"It is understood and agreed that the said parties as beneficiaries of said trust will maintain and pay all taxes and other charges against the said property in the proportion of their interest above outlined, and that the said W. H. Beckham as trustee will have no duties as to the payment of taxes or any other details as to the protecting of said property from liens or damages other than to hold the title for the purposes herein expressed as trustee for the parties beforenamed and in the proportions herein stated.

"In the event of the death of either of the beneficiaries, it is understood that the interest of such beneficiary here in set-out will vest in such party as may be designated under any will, or if there be no will then in such administrator or heir as the law may provide.

"The said party of the first part further agrees to promptly convey the said property to any corporation or transferee as the parties of the second part may hereafter agree upon and request.

"Should the party of the first part be called upon to expend any funds or take any action for the protection of the said property against liens or claims of third parties while holding title to the same as trustee herein recited, the said party of the first part will have a lien upon said property or any income derived therefrom for his reimbursement for such expenses under such circumstance."

"In Witness Whereof, the said party of the first part has hereunto set his hand and seal as a binding Declaration of Trust, this the day and year first above written."

Motion to dismiss the amended Bill was interposed and denied.

The allegations of the bill are sufficient to show that the title was vested in Ethyl Winifred Elvins by deed from the Hendersons in trust for herself, her husband and the plaintiffs, and that she conveyed the same to Beckham as a

naked Trustee to hold the title for the *cestui que trustant* and the only obligations assumed by the Trustee were to pay over to the *cestui que* trust any proceeds coming into his hands from the property and to convey the same if and when the beneficial owners should agree upon and request such conveyances.

Under the terms of the trust agreement, viz.: "In the event of the death of either of the beneficiaries, it is under stood that the interest of such beneficiary herein set out will vest in such party as may be designated under any will, or if there be no will then in such administrator or heir as the law may provide," the trust will terminate at the death of either of the beneficiaries. This is also true because after the death of either of the beneficiaries there can be no agreement between the named beneficiaries for a conveyance to be made by the trustee. Therefore, the agreement does not violate the rule against perpetuities.

That the trust created by the agreement, *supra,* is a mere naked or passive trust is readily apparent. Mr. Pomeroy in his Equity Jurisprudence, 4th Ed., Vol.. 1, page 185, Sec. 153; says:

"Express private trusts are either 'passive' or 'active.' An express private *passive* trust exists where land is conveyed to or held by A in trust for B, without any power expressly or impliedly given to A to take the actual possession of the land, or to exercise acts of ownership over it, except by the direction of B. The naked legal title only is vested in A, while the equitable estate of the *cestui que trust* is to all intents the beneficial ownership, virtually equivalent in equity to the corresponding legal estate."

An again, in the same work, Vol. 3, page 2125, Section 980, the author says:

"There being no common law actions to which resort could be had, the rights of the *cestui que use* were for a

considerable time purely moral, and were protected only through the authority of the clergy, acting as confessors, upon the consciences of those who held the legal title of land for the use of others. No traces of applications to the court of chancery have been found in the early .records prior to Henry V but during his reign the court began to entertain such suits and to decree relief. In the reigns of Henry VI and of Edward IV the chancery jurisdiction was fully established, and was also recognized by the courts of law. In other words, the law courts, while refusing themselves to protect the estates of *cestui que usent,* admitted the fact that such estates existed and were protected by the court of chancery. The passive or permanent use as established in equity is thus described by Bacon when it is created in favor of the feoffor himself, and the description would apply to the case where it is created for the benefit of a third person by a slight change of language. He says: 'The use consisted of three parts: 1. That the feoffee (trustee) would suffer the feoffer (*cestui que use*) to receive the profits; 2. That the feoffee, upon request of the feoffor (*cestui que use*) would execute .(i. e., convey) the estates to the feoffor (*cestui que use*) or his heirs or to any other by his directions; 3. That if the feoffee were dismissed, and so the feoffor (*cestui que use*) disturbed, the feoffee would re-enter or bring an action to recover the possession.' "

In Kay v. Scates,, 37 Pa. St. 31, 78 Am. Dec. 399, it was held:

"MERE DRY TRUST WILL NOT BE SUSTAINED when persons equitably entitled to any property take absolutely the entire beneficial interest, and the trustee has no duty to perform; unless it be a special trust intended to accomplish some object, as to preserve contingent remainders,

protect property for the sole and separate use of a married woman, or from the creditors of the *cestui que trust.*

"TRUSTS WILL NOT BE SUSTAINED, BUT WILL BE TREATED AS EXECUTED, and the legal estate as vested in the *cestui que trust,* where the persons named as trustees have no duties to perform which require the seisin or possession of the estate to be in them, and the persons for whose use the trust was created are *sui juris.*"

In Newcomb, *et al.,* v. Masters, *et al.,* 287 Ill 26, 122 N. E. 85, it was held:

"Where no active duties are imposed on trsutee who is directed to hold for the life tenant and remaindermen, the trust is a dry or passive one, which the statute of uses executes, and the *cestui que trust* becomes seized of the legal estate."

It appears that our statute of uses, Sec. 3795 R. G .S., 5668 C. G. L., which is as follows:

"By deed of bargain and sale, or by deed of lease and release, or of covenant to stand seized to the use of any other person, or by deed operating by way of covenant to stand seized to the use of another person, of or in any lands or tenements in this State, the possession of the bargainor, releasor or covenantor shall be deemed and adjudged to be transferred to the bargainee, releasee or person entitled to the use as perfectly as if such bargainee, releasee or person entitled to the use had been enfeoffed by livery of seizin of the land conveyed by such deed of bargain and sale, release or covenant to stand seized. Provided, that livery of seizin can be lawfully made of the lands or tenements at the time of the execution of the said deeds or any of them.", should be construed as having like application to a trust agreement of the sort which we have under consideration here as was applied by the Illinois court in the Newcomb case.

It appears to be very well recognized that the holding of legal title is not essential to the right to maintain partition under statutory provision such as ours. Sec. 3204 R. G. S., 4996 C. G. L., which is as follows: "Such bill may be filed by any one or more of several joint tenants, tenants in common or coparceners, against their co-tenants, coparceners or others interested in the lands to be divided," but that partition may be maintained by *cestui que trust* where the trustee holds only the naked trust.

In 20 R. C. L. 752, Sec. 33, it is said: "It is the general rule that where property is placed in trust either by deed of trust or testamentary direction, the corpus thereof to be held, managed and disposed of in a particular way, as directed, a beneficiary of the trust or one claiming by or through him cannot maintain partition proceedings during the active existence of the trust, as to do so would be to defeat the objects thereof and in effect would be a usurpation of the powers of the trustee by the court. Partition has, however, been permitted at the suit of the equitable owner where property was conveyed in trust to secure advancements, the claim for advancements being merely a lien and the owner thereof claiming an absolute title, and also where it was clear from the terms of the trust that no definite time was set when the property should be sold and the trust terminated, and it also appeared that the persons who were to decide on the price for which the property was to be sold did not agree as to the steps to be taken to terminate the trust."

In Fox, *et al.*, v. Fox, *et al.*, 250 Ill. 384, 95 N. E. 498, it was held:

"Where inherited property sold under partition was bid in by an heir, under an agreement that it should be held in trust for her brothers and sister, and for the children of a deceased brother, and no definite time was set for the ter-

mination of the trust, there may be distribution of the assets or partition of the estate before all the land is sold; the persons appointed to sell not being able to agree upon the price.

"Persons holding the equitable title to land held under a trust are entitled to maintain a bill in partition and for an accounting."

"Whether there was an equitable conversion under a trust in land held for the benefit of several heirs is to be determined from the terms and conditions of the trust; it being usually necessary for that purpose that there be an absolute direction that the land be sold, so that, where the sale was made dependent on the argement of certain parties as to time and price, there was no conversion."

"When the purposes of a trust have been fulfilled and the trustee holds the property on a simple trust, or it becomes impossible to carry out the trust, the beneficiaries having absolute equitable ownership of the fund are entitled to have it terminated."

The text supports the syllabus contained in the head-notes quoted.

In 26 R. C. L. 1175, Sec. 9, it is said:

"When an estate is granted or devised in trust merely to permit a third person to receive the rents and profits, and not requiring any action or management on the part of the trustee, the trust is nominal and the estate vests immediately in the beneficiary, though the trustee is to make conveyances at the direction and appointment of the beneficiary."

In Bowen v. Chase, *et al.,* 94 U. S. 812, 24 L. Ed. 184, it was said:

"The effect of the Revised Statutes of New York upon this trust is next to be considered. The chapter which contains the article on Uses and Trusts (1 R. S. 727)

went into operation on the 1st of January, 1830. By this article all passive trusts were abolished, and the persons entitled to the actual possession of lands, and to the receipt of the rents and profits thereof, in law or in equity were to be deemed to have the legal estate therein to the same extent as their equitable estate; saying, however, the estates of trustees whose title was not merely nominal but was connected with some power of actual disposition or management in relation to the lands. Future trusts were allowed to be created to sell land for the benefit of creditors or to create charges thereon, or to receive the rents and profits and apply them to the use of any person for life or any shorter term. In construing these provisions the courts of New York have held that a trust to receive and pay over rents and profits is valid; but that a trust for the use and benefit of the beneficiary, not requiring any action or management on the part of the trustee, except, perhaps, to make conveyances at the direction and appointment of the beneficiaary is not a valid trust within the statute, but inures as a legal estate in the beneficiary. This, we think, is the general result of the cases. See Leggett v. Perkins, 2 N. Y., 297; Leggett v. Hunter, 19 N. Y. 454; Wood v. Mather, 38 Barb. 477; Anderson v. Mather, 44 N. Y. 257; Frazer v. Western, 1 Barb. Ch. 238.

"In applying the principle of these cases to the case before us, we are met by the alterative character of the trust, namely: that the trustee shall either collect and receive the rents and profits, and pay them over to Madame Jumel, or, at her election, shall permit her to use, occupy and possess the premises, and collect and receive the rents and profits to her separate use; and, in either case, to convey as she might direct, or to her heirs in case no direction be given. The first of these alternatives, according to the cases, would be a valid trust; but the second is equivalent

to nothing more than a mere trust for her use and benefit. During the life of her husband, who died in 1932, it might perhaps be fairly contended that the existence of the legal estate in the trustee was necessary to protect her in the enjoyment of the property as separate estate free from the control of her husband. But, after his death, the option of managing the property herself being in her and not in the trustee, we are inclined to think that the trust became a mere passive one and that the equitable estates were, by the Revised Statutes, converted into legal ones."

We think this authority is applicabale in view of the terms of our statute of uses.

It will appear, from a casual perusal, that Section 119, page 316, of 47 C. J., sustains a contrary view, but when we turn to Sec. 200 we find our view supported by the text, which reads:

"Where a naked or dry trust is created vesting the legal title in the grantee to hold simply for the use of the *cestui que trust,* under the rule that one having an equitable title and the present right of possession is entitled to partition in a court of equitable jurisdiction, are entitled to partition. But it is elementary law that if the trust, whether ceated by will or deed or by any other method by which a valid direction can be given, is an active and subsisting one, the *cestui que trust* are not entitled to partition, and the reason usually assigned is that the court will not decree partition where its effect would be to override and nullify the intention of the grantor or testator who created the trust and defeat its purpose, although another insuperable obstacle to partition is that the *cestui que trust* have not possession and are not entitled to immediate possession. Nevertheless, where the purposes of the trust have been fulfilled, the beneficiaries, having the absolute, equitable title to the land as tenants in common, are entitled to have

the trust terminated and may bring a bill against the trustee for an accounting and for partition."

In Windle v. Kelly, *et al.*, 135 Neb. 143, 280 N. W. 445, it was said:

"The principal question on appeal arises on the contention of defendants that the ward is not in possession of the land and is not a 'tenant in common' or a 'joint tenant' for whom partition may be decreed. The statute provides: 'All tenants in common, or joint tenants of any estate in land may be compelled to make or suffer partition.' Comp. St. 1929, Sec. 20-2170. 'Any estate' of a joint tenant in land, therefore, is subject to partition. Does the ward have such an estate? Proper conclusions and findings on the pleadings and the evidence are as follows: The two sons and the three daughters of testator acquired this land in equal shares through the probated will of their father. For the purpose of settling the estate without delay, one of the daughters, the executrix, by oral understanding of all, in consideration of 'One Dollar and division of property,' conveyed the legal title to another daughter. Pursuant thereto the estate was settled but the land was never divided. The legal title which the grantee thus acquired to serve the specific purposes of all equally came from all the devisees and no one paid or received any money in the transaction. Thus far the equities in the undivided land remained as they came from testator. To enable the grantee to pay legacies, debts and the share of John without a division or actual sale of the land, the devisees, with the exception of grantee, quit-claimed to her their interests. This transaction intentionally resulted in the loan secured by the mortgage, which served the purpose stated, but no one except John received any consideration in money for the conveyance of the title.

"The transactions, facts and circumstances bind grantee

by a resulting trust. The pertinent rule of equity adopted here and elsewhere has been stated as follows:

" 'Where land has been conveyed by an absolute deed, the intention of the parties not being to confer on the grantee the beneficial interest, but merely to facilitate the accomplishment of some specific purpose it has been held that the purpose of the conveyance may be shown by parol, and thereby a resulting trust may be raised in favor of the grantor.' 15 Am. & Eng. Encyclopedie of Law (2d ed.) 1127; Doll v. Doll, 96 Neb. 185, 147 N. W. 471.

"Grantee contributed no more to the conveyance to her than any other beneficiary. She owned in equity only an undivided one-fourth interest in the land, the same as each of the three other beneficiaries. She held the title and beneficial interests for all subject to the mortgage. Being a trustee, her tenancy and possession were not for herself alone but, by construction of law, were for herself and the other beneficiaries of the trust on equal terms. Including the ward, all beneficiaries were tenants, in common. 'Any estate' of a joint tenant in land is subject to partition. Comp. St. 1929, Sec. 20-2170. The Suit is one in equity and the court acquired jurisdiction for all purposes of partition with power to decree the resulting trust and determine the interest of each equitable owner of the land subject to the mortgage and to direct the division or sale thereof."

In Lach v. Weber, *et al.*, 123 N. Y. Equity 303, 197 Atl. 417, it was held:

"A suit for partition of land held by a sister and two brothers as tenants in common could be maintained notwithstanding that legal title was vested in sister and that brothers had only an equitable fee coupled with a present right to a conveyance of their shares of the legal title."

In Hobbs, *et al.,* v. Frazier, as Trustee, etc., 56 Fla. 796, 47 Sou. 929, it was said:

"Under our statute any one or more of several joint tenants, tenants in common or co-parceners may compel partition by suit in equity. The joint tenants, tenants in common and co-parceners contemplated by the Statute are those who are in some way the owners of a beneficial estate in the land, or whose status and duties are of such a nature as require the exercise of the right to compel partition by judicial proceedings."

So it appears that as long ago as 1908 it was recognized that partition could be maintained by the owner of a beneficial estate against a joint tenant, a tenant in common or a co-parcener and we hold that under the allegations of the bill of complaint in this case the appellants Elvins and appellees Seestedt are joint tenants.

We find no error in the order appealed from. Therefore, same should be and is affirmed.

So ordered.

TERRELL, C. J., and THOMAS, J., concur.

BROWN, J., concurs in opinion and judgment.

Justices WHITFIELD and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.