Horace P. Robinson and Marie D. Robinson, his wife, v. Commissioner. Wallace A. Robinson v. Commissioner. H. F. Hammon Trust, by Horace P. Robinson and Wallace A. Robinson, Co-Trustees, v. Commissioner.
Robinson v. Commissioner
Docket Nos. 4655, 4656, 4657.
United States Tax Court
1945 Tax Ct. Memo LEXIS 24; 4 T.C.M. (CCH) 1039; T.C.M. (RIA) 45357; November 30, 1945
*24 Douglas D. Felix, Esq., Congress Bldg., Miami, Fla., for the petitioners. E. L. Potter, Esq., for the respondent. MELOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: These duly consolidated cases involve deficiencies in income tax for the calendar year 1941 in the following amounts: Docket
No.
Petitioner
Amount
4655
Horace P. Robinson and
Marie D. Robinson, his
wife
$ 446.58
4656
Wallace A. Robinson
475.27
4657
H. F. Hammon Trust by
Horace P. Robinson and
Wallace A. Robinson
1,694.18
The sole question is whether each petitioner may deduct a pro-rata share of the net loss sustained in a farming operation in Florida during the calendar year 1941. Findings of Fact The petitioners in the first two cases are individuals residing at Pompano, Florida, They are also co-trustees of the Hiram F. Hammon Trust. Income tax returns for the year 1941 were filed with the collector of internal revenue for the district of Florida. On May 31, 1922, Hiram F. Hammon created a trust (hereafter referred to as Hammon Trust) and transferred several large tracts of land located in the State of Florida aggregating approximately *25 4,479.75 acres, together with certain machinery, live stock and equipment thereon, to Farmers Bank and Trust Co., West Palm Beach, Florida, as trustee. The trust instrument provided inter alia: "FIRST: To receive, hold, and sell the same, in the manner hereinafter specified, and to collect, recover and receive the income and profits to be derived from the operation thereof under the management of William P. West, of Pompano, Broward County, Florida, or his successors in management, and after deducting the commissions of the Trustee as hereinafter provided, and the proper and necessary expenses in connection with the administration of the trust, to pay the same in annual installments unto the following persons in the proportions following: "Unto the party of the first part, his executors, administrators, heirs and assigns five-eights; unto William P. West, of Pompano, Broward County, Florida, his executors, administrators, heirs and assigns two-eights; and unto Horace P. Robinson also of Pompano, Broward County, Florida, his executors, administrators, heirs and assigns one-eighth. "SECOND: The Trustee shall hold the above described property in trust for the following persons *26 in the following proportions: "The party of the first party, his executors, administrators, heirs and assigns, an undivided five-eights interest; William P. West, of Pompano, Broward County, Florida, his executors, administrators, heirs and assigns an undivided two-eights interest; and Horace P. Robinson, also of Pompano, Broward County, Florida, his executors, administrators, heirs and assigns an undivided one-eighth interest. "THIRD: It is the desire and wish of the party of the first part that the property above described be operated under the management of William P. West, of Pompano, Broward County, Florida, and that the income derived from such operation be given unto the Trustee by the said William P. West for distribution in the manner hereinbefore described on the first day of July in each and every year beginning July 1, 1923. It is also the desire of the party of the first part that the property above described shall be held intact. Should it appear to the Trustee and the Beneficiaries, however, that it is impossible to operate the said property at a profit, or it is, in their opinion, advisable to dispose of or sell the said property, the Trustee shall have the power *27 to dispose of or sell the said property in such manner as it shall deem to be for the best interests of the beneficiaries, that is to say the party of the first part, the said William P. West, and the said Horace P. Robinson, their executors, administrators, heirs and assigns. "FOURTH: In the event of the Trustee making a sale of all or any part of the said property, the proceeds, after deducting all commissions and expenses, shall be distributed and paid unto the said party of the first part, the said William P. West and the said Horace P. Robinson, their executors, administrators, heirs and assigns, in the following proportions, to-wit: $ "Unto the party of the first part five-eights; unto the said William P. West, two-eights; and unto the said Horace P. Robinson, one-eighth. "FIFTH: In the event of the said property, or any part of it, remaining unsold at the time of the death of the party of the first part, the party of the first part hereby reserves the right to dispose of by will his interest in and to the said property, or any part of it remaining unsold, which interest is an undivided five-eights. "SIXTH: In the event of the said property, or any part of it, remaining *28 unsold at the time of the deaths of the said William P. West and the said Horace P. Robinson, or either of them, they and each of them are hereby given the right to dispose of their interest in and to the said property, or any part of it remaining unsold, by will. And in the event that both of them, or either of them, shall die intestate their interest in and to the said property, or any part of it remaining unsold at the time of their deaths, shall descend unto their heirs according to the law of descent provided for in the statutes of the State of Florida. "EIGHTH: In the event of the said William P. West becoming incapacitated, or in the event of his refusal at any time to act as manager of the said property, or in the event of his death, his successor shall be selected by the beneficiaries herein mentioned from persons known to be skilled and experienced and efficient in management of properties of a nature similar to the property above described, and subject to the approval of the Trustee. "NINTH: It shall be one of the duties of the said William P. West, as manager of the above described property, to furnish to the Trustee on the First day of each month, or as soon thereafter *29 as possible, a statement of operations showing income and disbursements for the previous month $ and the amount of profit or loss at which said operations have been conducted. In the event of such operations resulting in losses during the life of the party of the first part, he shall have the right to determine whether or not the property shall continue to be operated or sold; and, if at the time of the death of the party of the first part, any or all of the property remains unsold, the Trustee shall thereafter have the right to determine whether or not the property shall be continued to be operated or sold in the event of the said monthly statements of operations showing losses instead of profits provided, however, that $ in arriving at such decision the Trustee shall take into consideration weather and market conditions and it shall not arrive at the conclusion that the property can not be operated $ profitably in any event unless the said monthly operating statements shall show losses for at least twelve consecutive months." The trust indenture contained no provision for the appointment of a successor trustee. Hiram F. Hammon died testate in November 1922. By the provisions *30 of his will he confirmed "all the terms" of the trust agreement of May 31, 1923, and directed his executors to support all of its terms and conditions. One of his 5/8ths interest in the Hammon trust was devised to Wallace A. Robinson and the remainder, or 4/8ths, to his executors in trust for certain designated persons not material here. This trust will hereinafter be referred to as the Second Trust. It provided that William P. West, one of the beneficiaries, should continue as manager of the property described in the Hammon Trust which he did until his death in 1938. He did not, however, at any time exercise complete authority over the operations of the property but he and petitioners Wallace A. Robinson and Horace P. Robinson operated the property together. In 1927 the Farmers Bank and Trust Co., trustee, failed and the liquidator was discharged on the 26th day of June, 1939. After the $ dissolution of the Farmers Bank and Trust Co. no successor trustee for the Hammon Trust was ever appointed. After the death of William P. West in 1938 petitioners managed the property held under the Hammon Trust which was then and had been for many years known as the Hammon Development Co. In *31 managing the property they were acting for themselves and as cotrustees under the Second Trust. Both were constantly on the properties directing the farming activities but neither exercise supreme authority. There was at no time any formal agreement between them as to the operation of the properties. They simply ran the enterprise as individuals from day to day. When it became necessary to borrow money for operating expenses notes were signed Hammon Development Co. by Horace P. Robinson and Wallace A. Robinson, usually, but not always, followed by the word "Trustees". The notes were always endorsed by Wallace A. Robinson and Horace P. Robinson, such endorsement being a condition precedent made by the lender. On or about April 30, 1940, an agreement was made with the heirs of West under which a portion of the property held in trust, representing the West share, was transferred to them. After this transfer the remaining property in the Hammon Trust was held, an undivided 1/6th interest by petitioner Wallace A. Robinson, an undivided 1/6th interest by petitioner Horace P. Robinson, and an undivided 4/6ths interest by them as trustees of the Second Trust. Wallace A. Robinson acted *32 as bookkeeper for the enterprise but all tax returns and final computations of profit or loss were made by a certified public accountant. In compliance with the laws of Florida petitioners filed an affidavit of proof of publication with the clerk of the local Circuit Court of Florida, showing that the H. F. Hammon Development Co. was a fictitious name and that Wallace A. Robinson, Horace P. Robinson and the entity we have heretofore referred to as the Second Trust were the persons interested in the business operated under that name. During the calendar year 1941 the farming operations carried on under the name of Hammon Development Co. resulted in a loss of $18,923.30. Of this sum $8,647.91 represented depreciation. Each of the petitioners reported upon his respective income tax returns for that year a portion of such loss representing his prorata share of the property operated by the Hammon Development Co. The respondent disallowed deduction of the claimed losses to the petitioners on the ground that the Hammon Development Co. was a taxable entity. Opinion The respondent determined that the Hammon Development Company was an association, taxable as a corporation, within the meaning *33 of section 3797(a)(3) of the Internal Revenue Code and the applicable regulations, Sec. 19.3797-2, Regulations 103, and therefore any losses which it sustained during the taxable year were not deductible by the parties in interest on their individual income tax returns. He contends that when Hiram F. Hammon created the trust on May 31, 1922, he established a farming unit and named a manager with the avowed intention of operating it as a unit; that no definite term of years for the endurance of the trust was fixed; that the farm property was operated as a unit until the death of West in 1938 and that thereafter the beneficial interests were not segregated but remained as an undivided corpus devoted to farming operations under single management. It is the contention of the petitioners that the Hammon trust was, at most, a passive trust and had no substance during the taxable year; that they held the equitable title and all the incidents of ownership in the property and business conducted under the fictitious name of Hammon Development Company; that they jointly managed and operated it for their own benefit; and that it was not an "association" within the meaning *34 of the statute. They argue that since they were the equitable owners of the property they were obligated to return the income under the rule laid down in Helvering v. Clifford, 309 U.S. 331, and under the same rationale are entitled to deduct the operating loss, including depreciation, on their personal income tax returns. The respondent relies on Morrissey et al., Trustees, v. Commissioner, 296 U.S. 344, and argues that here, as in the Morrissey case, there was such an organized community of effort for doing business as to come within the accepted definition of "association", i.e.; (a) It was made up of more than one person associated together in its operation; (b) its operations were carried on for profit; and (c) it bore a resemblance to corporate form. In the Morrissey case supra the court laid down certain factual criteria to be observed in determining whether the enterprise so resembles a corporate form of organization that it must be classed as an "association" for income tax purposes - (1) an entity holding title with continuing succession; (2) centralized management through representatives of the beneficiaries; (3) security from termination or *35 interruption by the death of owners of beneficial interests; (4) facility of transfer of beneficial interests without affecting the continuity of the enterprise; (5) limitation of the personal liability of the participants to the property embarked in the enterprise - distinctive features which satisfy the primary conception of associations. The mere fact that two or more persons are joined in a business for profit does not necessarily mean that an association, taxable as a corporation within the meaning of the revenue laws, has been created. Cf. Commissioner v. Horseshoe Lease Syndicate, 110 Fed. (2d) 748; Commissioner v. Rector & Davidson, 111 Fed. (2d) 332; McKean et al., v. Scofield, 108 Fed. (2d) 764. The determination must depend on the facts and not on narrow technical distinctions. We have here two individuals and a trust, each owning an undivided beneficial interest in certain farm lands which they are jointly operating for their own benefit. The legal title to the property was originally conveyed to a bank as trustee, without any provision for a successor. The bank failed in 1927 and was liquidated. No successor trustee was thereafter *36 appointed. No term was prescribed in the trust instrument for the duration of the trust. The farms were operated under the fictitious name of Hammon Development Company. West, the manager and beneficiary of a 1/4th interest, was the nominal manager prior to his death in 1938. After his death the one-fourth interest of West was conveyed to his heirs. Thereafter the enterprise was managed by petitioners. There was no formal agreement among them as to how it would be operated. When it became necessary to borrow money for operating expenses, notes were given, signed "Hammon Development Company" by petitioners "trustees." These notes were required by the payees to be endorsed by petitioners before the money was turned over to them. Under the laws of Florida petitioners were the equitable owners of the realty which they operated more as joint tenants than as an association, and, since there was no term prescribed for the duration of the trust, they, or any of them, particularly after the death of West, might have maintained a bill for the partition of the property. Cf. Elvins v. Sustedt, 193 So. 54. Under the facts of this case we hold that the "Hammon Development Company" *37 was not an entity taxable as a corporation and that petitioners were entitled to the deductions claimed on their personal income tax returns. Cf. Theodore D. Buhl et al., 45 B.T.A. 274; Mary E. Wenger, 42 B.T.A. 225, affd. 127 Fed. (2d) 523, cert. denied 317 U.S. 646. Decision will be entered under Rule 50.