289 So.2d 42 (1973)
In re Trust under WILL OF Susie L. JONES, Deceased.
Phyllis D.L. AHLRICH et al., Appellants,
v.
Milender JONES, Individually and As Executrix of Russell Alvin Jones, Deceased, et al., Appellees.
No. 73-49.
District Court of Appeal of Florida, Second District.
December 31, 1973.
Rehearing Denied February 21, 1974.
*43 Edmund S. Whitson, Jr., of Baker, Whitson & Whitson, Clearwater, for appellants.
Milton D. Jones of Wightman, Rowe, Weidemeyer & Jones, Clearwater, for appellee, Milender Jones.
James A. Baxter of Macfarlane, Ferguson, Allison & Kelly, Clearwater, for appellee, First National Bank & Trust Co. of Dunedin.
COWART, JOE A. Jr., Associate Judge.
From a casual reading, the will of Susie L. Jones appears well enough drawn. It is not. It gives property outright to a daughter, providing that if the daughter predeceases the testatrix, such property to go to the daughter's issue in equal shares. A home is similarly devised outright to a son Russell Alvin Jones. A grove caretaking business is given outright to three other named sons, again providing that if any such son predeceased the testatrix, his one-third interest would go to his issue in equal shares. All five children survived the testatrix.
The residue of the estate, apparently mostly citrus groves, was left in trust. The trustee was directed to annually pay one-fifth of the net income to each of the five named children and:
In the event any of my said children fail to survive me, then the share which such deceased child would have received if living shall go, in equal shares, to the issue of such deceased child living at the time of such distribution.
It will be here noted that as to distribution of income, while the scrivener contemplated the contingency of a beneficiary not surviving the testatrix-settlor and provided for a gift over to such predeceasing beneficiary's issue, not contemplated was the possibility of the beneficiary surviving the testatrix-settlor but dying before final distribution of the trust corpus. This becomes important for two reasons, viz: (1) the trust provides that net proceeds of interim sales and the residuary trust corpus would be distributed in the manner prescribed for the distribution of the net income (the omission is thus adopted by reference and doubly compounded); and (2) Russell Alvin Jones remarried and died testate during administration of his mother's trust, leaving his estate to the step-mother of his three children.
Paragraph 8, Item 4, of the testamentary trust mandates the trustee to sell any of the trust property upon the written request of a majority of the settlor's children and specifically "in connection with the request for a sale of any of the trust property" the scrivener now considers the second contingency and provides "in the event any of my said children fail to survive me or die pending the administration of the trust,  the [decision of a] majority of the then living issue of such deceased child shall be accepted in the place of the request of such deceased child".
Another problem is that there is no time certain provided for the trust to terminate and termination is to occur "at such time as all of the real property in the trust has *44 been sold and all of the sales price collected". This trust was qualified under Chapter 737 and the trustee has power of sale under Paragraph 7, Item 4, and under F.S. Sec. 691.03(2), F.S.A., and may be required to sell under Paragraph 8, Item 4, nevertheless, there is no requirement that these events ever occur and thus it is argued that this trust is of indefinite duration and offends the rule against unreasonable restraints on alienation.
By omission of clear provision as to distribution of the trust income and corpus allocated to a child when such child survived the testatrix-settlor but died during the life of the trust renders the trust ambiguous and it therefore becomes the duty of the court to construe the will to ascertain, if reasonably possible, the intention of the testatrix-settlor from the document itself and by application of established principles of law. Study of the entire will reveals clearly that Susie P. Jones desired to give each of her children something outright and to leave the balance of her property in trust for their benefit. From the entire will it further clearly appears that the testatrix' paramount purpose was to provide for her property to pass to, or be held for the beneficial interest of, primarily, her five children and, secondarily, the issue of her children. This is normal because these two classes are, of course, the natural objects of her bounty. The provisions for gifts over as to the outright devises (although by later events made inapplicable) together with the "managerial authority" as to requests to sale trust property bestowed by Paragraph 8, Item 4, on the then living issue of any child dying pending the administration of the trust, and the absence of any provisions to the contrary, leads to the conclusion, and this court so construes the trust and holds, that the intent and plan of the testatrix-settlor was to vest the equitable title to one-fifth of the trust property in each named child subject to divestment or complete defeasance[1] as to all income and corpus not distributed to such named child during its lifetime with a gift over of such undistributed income and corpus to the issue of any such child living (i.e., those in ventre sa mere and in esse) at the time of the death of any such child as may die before the trust is finally distributed, in equal shares per stirpes.[2] Therefore, the appellants, being the three children (issue) of Russell Alvin Jones, succeed to the remaining one-fifth interest of trust income and corpus which their father would have received had he survived until final distribution of the trust and the father having no devisable interest in said trust, his estate has no interest therein.[3] Such gifts over to issue, unlike those to the named children, are class gifts which, upon their ancestor's death, vest absolute and indefeasibly in the members of the class when it closes and are not then subject to divestment or condition subsequent, or other contingency as to interest and, although equitable in nature are fully and freely alienable and devisable.
Paragraph 8 of Item 4 providing a method by which a majority of the beneficial interests may require the trustee to sell trust property provides "Net proceeds from any such sale shall be distributed in the same manner as  income from said groves". As noted above, Paragraph 5 of Item 4 provides that "The trustee shall annually pay to each of my five children  one-fifth of the net income from the trust property;  ". Therefore, it appears the intent of the settlor is that net proceeds from requested sales of trust property should be treated as net income and should be distributed annually to the beneficiaries. This construction permitting partial distribution *45 of trust corpus adds meaning and value to the beneficiaries' right to require sales, otherwise the only way beneficiaries can obtain a distribution of corpus is to require sale of all property and thereby effect a termination of the entire trust and final distribution under Paragraph 9 of Item 4. As Paragraph 7 of Item 4 requires investment only of "funds coming into the trustee's possession upon the distribution of my estate  " (i.e., the original receipt of trust funds from the executor) there is nothing in the trust provisions to indicate otherwise and, therefore, the trust is so construed, that, independent of the mandatory sale provision of Paragraph 8, Item 4, the trustee has an independent power of sale under Paragraph 7, Item 4, and under F.S. Sec. 691.03(2), F.S.A., and that the net proceeds of such sales are likewise to be distributed annually to the beneficiaries. Again, this construction is, as it should be, in favor of the beneficiaries who then have the option to receive such interim distribution of corpus or by waiver and side agreement with the trustee allow the trustee to continue to hold and reinvest it for them.
The rule against perpetuities was urged to threaten the validity of this testamentary trust. The trial judge correctly held the trust valid but, haunted by the specter of that ancient legal terror and under compulsion to meet his duty to avoid the argued application of the rule, was led to adopt a strained construction of certain provisions of the trust. As is not unusual, those who conjured up this Ariel below now blithely disassociate their position from the conclusion, they led the trial judge to adopt. The rule against perpetuities is concerned only with the period of time within which a granted or devised estate must vest in interest (this does not necessarily include the right to possession or the time of enjoyment of the vested right) and here not only was the legal title to the trust property immediately vested in the trustee (subject always to costs of administration, rights of creditors and payment of estate taxes), but the primary equitable estates therein created vested immediately in right subject only to divestment, and the secondary estates  the gifts over to the named children's issue  will all vest, if at all, upon the termination of lives in being (being the lives of the five named children) as hereinabove held, though the beneficiaries' right to possession and enjoyment be deferred and the trust extended for a term beyond a life or lives in being and twenty-one years plus a period of gestation. See Story v. First National Bank and Trust Co., 115 Fla. 436, 156 So. 101 (1934), and Cartinhour v. Houser, Fla. 1953, 66 So.2d 686.
The last challenge to this trust is that it violates the rule against unreasonable restraints on alienation in that it is of indefinite and possibly perpetual duration (thereby separating the legal title and equitable possibly forever) because the trust is not to be terminated (Paragraph 9, Item 4) until "all of the real property in the trust has been sold and all of the sales price collected". It is claimed that under these circumstances the provision that a request to sale be from a majority of the beneficiaries constitutes the "unreasonable restraint".
In the Story case, supra, 156 So. at 104, Justice Terrell explains that after the statute quia emptores, 18 Edw. I, c. 1 (1289) enabled tenants in fee simple to alienate their lands at pleasure, under the common law,[4] the beneficiary of a trust holding real estate in fee, in which no one else was interested,[5] could, on becoming of age,[6] ignore and terminate any restraint on his right to alienate it. In effect, any trust provisions restraining this right of alienation are considered bad and invalid and, *46 freed from such restraint, the enjoyment or possession of the gift is accelerated.[7] As Justice Terrell observed, Florida has not adopted the Claflin doctrine nor statutory modifications and we are bound by the common-law rule. If this is the current Florida rule against unreasonable restraints on alienation, it differs from many general references[8] and, while noted by writers,[9] has escaped attention and application by the bench and bar. This is evidence that in the conflict between a property owner's right to dispose of his property as he sees fit and the right of each generation to control the wealth of its own age free from the dictates of the hand and voice of the past there is little conflict. Modern society may have incidentally solved this old problem by making it much more difficult to accumulate wealth sufficiently in excess of needs to pass on to the future. In any event, we find no restraint on alienation here. As noted the trustee has an independent power of sale and may have a legal duty, enforceable in equity, to not unreasonably prolong sale and distribution, see Shoemaker v. Newman, 1933, 62 App.D.C. 120, 65 F.2d 208, 89 A.L.R. 1034, and the appended annotation. The provision by which the beneficiaries can mandate sales and annual distribution of corpus rather than restraining alienation actually enhances it. The testatrix far from evidencing a design to place her property in trust beyond her beneficiaries reach has, by the very provision attacked, placed it within their power to terminate the trust by directing the trustee to sell all the remaining real property. Unlike the rule against perpetuities which affirmatively requires vestiture within a specified period, the common law merely prohibited restraints on alienation but did not require provisions to assure alienation. Although it would occasionally thwart a trust settlor's plan the application of the common law rule exactly as described in the Story case would work little hardship because the well-advised prospective purchaser from the beneficiary would not rely on a merger depending on unrecorded facts and would require a conveyance from or adjudication against, the trustee. Further, the doctrine should be applied only as to dry or passive trusts to prevent titles conveyed by trustees under active trusts being clouded by the possibility of an unsuspected title merger in a lone adult beneficiary. Where, as here, it may be a valuable right for a particular primary beneficiary to permit a gift to pass over to "issue" under the original devise in trust rather than accelerating distribution and increasing the taxable estate of the primary beneficiary, one of many beneficiaries should not be able, by partition, to defeat the purpose of an active and subsisting trust, but must abide by majority rule under Paragraph 8, Item 4, or wait until the purposes of the trust have been fulfilled and the trust terminated and their shares distributed.
The trust is valid, violates no rules relating to perpetuities or restraints on alienation, vests subject to divestment in each named child with gift over of undistributed income and corpus in fee to such child's issue in equal shares per stirpes. The net proceeds of all sales of real property, *47 whether made under the trustee's discretion or required by a majority of the beneficiaries, is distributable with all net income annually on 27 January (unless the parties have expressly or impliedly agreed to some other date). The trust being express and active, Elvins v. Seestedt, 1940, 141 Fla. 266, 193 So. 54, does not apply, a beneficiary cannot force partition and must proceed by agreement with a majority of beneficiaries to require sale or establish by suit in equity that the refusal of the trustee to sell and liquidate is under all the circumstances, including the purpose of the trust and the effect on all the beneficiaries, unreasonable and inequitable.
The final judgment of the trial court is amended to conform to this opinion, and, as so amended, is hereby affirmed.
MANN, C.J., concurs.
HOBSON, J., dissents with opinion.
HOBSON, Judge (dissenting).
Upon careful consideration of the record and briefs filed in this cause, I believe that the eminent trial judge correctly construed the trust as a whole when he determined that the interest of Russell Alvin Jones in the trust estate was a vested interest and constitutes an asset of the said Russell Alvin Jones' probate estate.
The trial judge further found that due to the indefinite time established by the trust for its termination the trust was subject to partition upon proper application.
It was held in Elvins v. Seestedt, 193 So. 54 at p. 58 as follows:
"In 20 R.C.L. 752, Sec. 33, it is said:
"`It is the general rule that where property is placed in trust either by deed of trust or testamentary direction, the corpus thereof to be held, managed and disposed of in a particular way, as directed, a beneficiary of the trust or one claiming by or through him cannot maintain partition proceedings during the active existence of the trust, as to do so would be to defeat the objects thereof and in effect would be a usurpation of the powers of the trustee by the court. Partition has, however, been permitted at the suit of the equitable owner where property was conveyed in trust to secure advancements, the claim for advancements being merely a lien and the owner thereof claiming an absolute title, and also where it was clear from the terms of the trust that no definite time was set when the property should be sold and the trust terminated, and it also appeared that the persons who were to decide on the price for which the property was to be sold did not agree as to the steps to be taken to terminate the trust.'
"This enunciation is applicable in the instant case because the trust agreement is entirely indefinite in fixing a time when the property may be sold and the trust terminated. If we take the trust agreement literally and allow for no equitable considerations, it can only terminate with the death of one of the parties cestui que trust or when all of the cestui que trustent agree for the sale and conveyance to be made. Such a provision is too indefinite to be regarded as fixing a definite time for the termination of the trust." (emphasis added) 193 So. 54, at p. 58.
I would affirm.
NOTES
[1] The distinction between contingent estates and estates vested subject to defeasance is most often made as to remainders but it also applies to other estates, see the Annotation in 131 A.L.R., Page 712.
[2] 13 A.L.R.2d 1023.
[3] We need not decide the disposition of the undistributed interest of a named child who dies without issue as that problem is not presented and may never arise.
[4] See F.S. Sec. 2.01, F.S.A.
[5] The application at common law of this limiting proviso to cotenants while interesting and perhaps applicable here, has not been researched.
[6] See Chapter 73-21 Laws of Florida.
[7] This historical explanation seems to suggest that, in effect, as to fee land estates, when a sole beneficiary became sui juris, the legal and equitable titles merged, the trust terminated and he acquired and could alienate the fee title and that any restraint on this right was unreasonable and void.
[8] See 31 C.J.S. Estates, § 8 b. (2), page 26 Alienation. The Annotation at 89 A.L.R. 1046, at 1055, and 1056, refers to the common law rule that no property interest can be held by any person in such a way that he can enjoy the income or benefits but cannot alienate it, but states that, except in N.Y. where statutes exist, most cases hold that indefinite and discretionary powers of sale in trustees do not restrain alienation at all.
[9] J. Allen Smith and Roy Keathley in an article: Future interests in Florida: A Plea for Judicial Supremacy in University of Florida Law Review, Vol. 9, Page 123, consider the Story case and in Footnote 32, Page 130, say "The problem of how long a restraint can last in a trust is not settled, nor are the courts in accord as to the result that follows when a restraint lasts too long."