GEORGE A. PEARRE, JR., Executor and Trustee,

*vs.*

## LILLIE L. GROSSNICKLE.

*Gift—Savings Bank Account—Creation of Trust.*

The mere execution, by a savings bank depositor, of an order to the bank to change the account standing in his name to a "joint account between" himself and his wife, "subject to withdrawal by check of either of" them, "and in the event of the death of either," the balance "to belong to the survivor," though followed by compliance with the order, does not effect a valid gift to the wife, it not appearing that the husband ever released control and dominion over the account.          p. 278

An order addressed to a bank by one having a savings account therein, directing that the account be changed to "a joint account between" him and another, "subject to withdrawal by check of either," "the balance to belong to the survivor," does not authorize a transfer on the books of the bank to such two persons "in trust for" such persons, "joint owners, to belong to the survivor."          p. 278

In order to create a trust in a savings bank deposit, the intent so to do must clearly appear, regardless of the form of the words used.          p. 279

One whose claim is based upon the transfer of a deposit on the books of a bank has the burden of proving facts showing the validity of the transfer.          p. 280

*Decided June 29th, 1921.*

Appeal from the Circuit Court for Frederick County (WORTHINGTON, J.).

Issues from the Orphans' Court on the petition of George A. Pearre, Jr., executor and trustee under the will of George O. Grossnickle. From a ruling in favor of Lillie Grossnickle, widow, co-executor under said will, petitioner appeals. Reversed.

The cause was argued before Boyd, C. J., Briscoe, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Milton G. Urner, Jr.,* and *George A. Pearre, Jr.,* for the appellant.

*Frank L. Stoner* and *William M. Storm,* for the appellee.

Pattison, J., delivered the opinion of the Court.

This is an appeal from the rulings of the Circuit Court for Frederick County on issues sent to it from the orphans' court of that county upon the petition of the appellant, George A. Pearre, Jr., an executor and trustee under the will of George O. Grossnickle, against Lillie L. Grossnickle, his co-executor under said will.

The issues were presented to determine the validity of certain alleged gifts from Mr. Grossnickle to his wife, the defendant, which she had taken possession of, and which, as charged by her co-executor, she had concealed from the estate of her husband and had refused to account for as part of his estate.

The alleged gifts consist of an automobile and two deposits in the Farmers & Mechanics' Bank of Frederick, Maryland, one a checking account for $550.62, and the other a savings account or interest bearing deposit for $6,188.58.

The verdict on the issue as to the validity of the gift of the deposit of $550.62 was for the plaintiff, while the verdict upon the other two issues relating to the automobile and the deposit of $6,188.58 were for the defendant, Mrs. Grossnickle.

An appeal was taken by Mr. Pearre from the ruling of the court against him, but no appeal was taken by Mrs. Grossnickle from the rulings against her

The twelfth prayer of the plaintiff asked the court to instruct the jury that there was no evidence legally sufficient to show a valid gift from the husband to the wife of the deposit in bank of $6,000 and accrued interest, and their verdict on

that issue (the fifth) must be for the plaintiff. The plaintiff was refused this instruction and the verdict of the jury upon that issue was against him.

The evidence discloses that, in the spring or early summer of 1918, Mr. Grossnickle, a prosperous business man of Frederick, who had for years been associated in business with one Charles A. Collins, was stricken with an incurable disease.

In the latter part of July or the first of August his condition became grave, and he gradually grew worse until the 18th day of December following, when he died. In the early stages of his illness and up to about the 1st of August, his wife from time to time received money, with which to defray the living expenses of the family, from Mr. Collins, who was conducting the firm's business. As she says, it became embarassing to her to call upon him for money when the needs of the family required it.

At this time, Mr. Grossnickle had the two accounts in the Farmers & Mechanics' National Bank of Frederick, the smaller one, as we have said, a checking account, and the larger one a savings deposit upon which interest was paid him. At times, he would draw upon his checking account but, as stated by his wife, it grew irksome to him to sign checks. When she told him of her dislike to call upon Mr. Collins for money, he, it seems, concluded to make some arrangement by which he would not be required to sign checks, and his wife would be relieved of the necessity of calling upon his partner for money.

Shortly thereafter, Mr. Hendrickson, assistant cashier of the Farmers & Mechanics' Bank, on a Sunday early in August, dropped in at the home of Mr. Grossnickle to say "Howdy-do" to him, and while there in conversation with Mr. Grossnickle "the matter came up about his wife being able to get some funds if he * * * could not sign a check, and I told him there was a way out of that if he wanted to do it and what he could do." He then explained to him that he "would have to get a  paper and sign it to that effect." Mr.

Hendrickson was unable to say what reply, if any, Mr. Grossnickle made to his suggestion, but he was inclined to think that Mr. Grossnickle was favorable to what he had said. Mr. Hendrickson was then asked if it was not the checking account to which reference was made in his conversation with Mr. Grossnickle, to which Mr. Hendrickson replied that Mr. Grossnickle wished to know some way by which his wife "could be put in a position to get some funds, if she needed them when he was not able to sign a check; of course, it naturally referred to the commercial (checking) account, but it may be that the other one came in before."

Mrs. Grossnickle testified that thereafter her husband said to her, "You go to the bank and tell Gilson (an officer of the bank) to give you one of those papers, so if you need it (money) you can get it, but if you don't need it I don't want you to spend it unless compelled to."

She afterwards got the paper from the bank, and as she says, several days thereafter her husband asked her if she had "the papers" and she told him she had and he asked to see them. She said to him, "Are you sure you want to see them?" He said, "Yes," and she got the paper for him. He read it over a number of times and signed it, but as he started to sign it, she leaned over and said to him, "Don't daddy, you sure you understand, know what you are doing?" He said, "Yes, I know what I am doing," very short to me, because he never cared for us to meddle in his affairs. This paper was signed on the 8th day of August and was as follows:

"Farmers and Mechanics National Bank, Frederick, Maryland.
"Gentlemen:
"You are hereby requested and authorized to change the account standing in my name on your books, as shown by bank book, to a joint account, between myself and Lillie L. Grossnickle subject to withdrawal by

check of either of us, and in the event of the death of either of us the balance to belong to the survivor.

"The above change to become operative from this date.

"Geo. O. Grossnickle."

It will be observed that the above order relates not to the checking account of Mr. Grossnickle but to the account standing in his name on the books of the bank "as shown by the Savings Book No. 4816," the amount of which was at least $6,000, and the record does not disclose that he ever checked upon this account; and as shown by the books of the bank, she never drew upon it after the transfer.

A like order for the transfer of the checking account was obtained from Mr. Grossnickle, but not until December the 16th, 1918, about two days before his death. This transfer, by the verdict of the jury, was invalid, evidently, as thought by it, for the reason that Mr Grossnickle was mentally incapable, at the time it was made, to make such transfer. In fact the jury so held upon the submitted issue whether he was at the time mentally capable of making the transfer, such an issue having been submitted to the jury in connection with the validity *vel non* of each of said gifts.

Upon the delivery of the order of transfer of August 8th, 1918, to the officers of the bank, an entry was made upon the books of the bank, and upon the pass books, transferring the savings account mentioned in said order; and had the transfer been made in conformity with the transfer order of August 8th, it would not have been a valid gift under the decisions of this Court, as it was not shown that Mr. Grossnickle ever in his life time released control and dominion over the deposit. *Whalen* v. *Milholland,* 89 Md. 199; *Taylor* v. *Henry,* 48 Md. 557. But it was not so made, as shown by the books of the bank. On them it appeared that the transfer was to "George O. Grossnickle and Lillie L. Grossnickle *in trust* for George O. Grossnickle and Lillie L. Grossnickle, joint owners, to belong to the survivor at the death of

either." It is clear that such transfer of the deposit was not authorized by the transfer order executed by Mr. Grossnickle, and it is equally clear upon the undisputed evidence in the case that it was never the intention of Mr. Grossnickle that a trust was to be created by the transfer of said deposits. Moreover, it may be said that the record absolutely failed to show that the transfer of the deposit as made was ever known to Mr. Grossnickle.

Mr. Hendrickson, when asked by the court if the ledger of the bank, showing the entry of "in trust for," was ever seen or inspected by Mr. Grossnickle, answered, "No, sir." When asked if he knew where the pass book was kept prior to and subsequent to the entry made therein, he said he did not know but "so far as I know Mrs. Grossnickle held the book"; and Mrs. Grossnickle, when asked if there was any pass book at their home at the time the transfer order was signed by Mr. Grossnickle, replied, "I think that Mr. Grossnickle had left all his bank books at the bank." (Q) He delivered this written order to you? (A) He gave it to me. (Q) But he did deliver to you the pass book of the bank respecting that account? (A) I cannot remember whether he did. (Q) You think it was at the bank? (A) I am sure it was at the bank, because he placed all those things at the bank before he had left. Meaning thereby, before he had left in the preceding June for Baltimore to receive treatment for his trouble.

This Court has said a number of times that the intention of the transferor of deposits to create a trust must be clear and convincing; and "the mere use of the word 'trustee' is not sufficient of itself to create a trust. If no intent to create a trust appears, none will be held to exist, regardless of the form of the word used." *Austin* v. *Central Savings Bank,* 126 Md. 144, and the cases therein named; also *Mathias* v. *Fowler,* 124 Md. 658; and *Geoghegan* v. *Smith,* 133 Md. 535.

It is a conceded and proven fact that before and at the time the entry of the transfer was made upon the books of the bank, Mr. Grossnickle was the owner of the deposit, and it was upon said transfer that the claim of Mrs. Grossnickle thereto was based; consequently, the burden was upon her to prove facts showing the validity of the transfer in order to entitle her to the deposit.

The question presented by the prayer under consideration is whether the evidence found in the record tending to show the validity of the transfer of the deposit was legally sufficient to be submitted to the jury for its consideration. That such evidence was not legally sufficient to go to the jury is, we think, sufficiently shown by the facts above stated, and the prayer should have been granted.

As to the alleged gift of the automobile by the husband to the wife, we find no rejected prayer of the plaintiff relating to said gift.

There are a number of exceptions to the rulings of the court relating to evidence but, after a careful examination of them, we find that they have little or no relation to the issue as to the gift of the automobile, or if so, we find no errors prejudicial to the plaintiff upon such issue.

As the court erred, in our opinion, in its refusal to grant the plaintiff's twelfth prayer, directing a verdict for the plaintiff on the fifth issue, such ruling of the court will be reversed, and the cause remanded.

> *The ruling of the court on the fifth issue re-*
> *versed, and cause remanded.*