581 A.2d 462

**Edgar BARKER, Individually, etc.**

**v.**

**Joanne AIELLO, et al.**

**No. 1973, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Nov. 5, 1990.

**630**

Benjamin Lipsitz (Sidney Blum, on the brief), Baltimore, for appellant.

Bernard J. Sachs (Goodman, Meagher & Enoch, on the brief), Baltimore, for appellees.

Argued before MOYLAN, GARRITY and BLOOM, JJ.

MOYLAN, Judge.

This is an appeal from a decision entered in the Circuit Court for Baltimore City, ordering that the assets of the estate of the deceased Ethel Barker Gamble include the monies in two bank accounts totalling $51,388.33. Edgar Barker, the appellant, contends that the accounts were trust accounts and that the monies became his property at Mrs. Gamble's death. For the reasons stated *infra*, we shall reverse the circuit court.

Ethel Barker Gamble died March 25, 1986, survived by her son Edgar Barker ("Edgar"), the appellant. Another son, Carl Barker ("Carl"), and her second husband, Ernest Gamble, had predeceased Mrs. Gamble. Carl was the father of the appellees, Joanne Aiello ("Joanne") and Richard Barker ("Richard").

Ethel and Ernest Gamble executed a joint will on November 24, 1964, in which the rest and residue of their estates

passed to the survivor, and after both their deaths to Mrs. Gamble's sons, per stirpes, share and share alike, should she survive Ernest. Around the time of Mr. Gamble's death in 1979, Mrs. Gamble opened two bank accounts, one at Equitable Bank and one at Maryland National Bank, in the names of Ethel Gamble, Carl Barker, and Edgar Barker. Both accounts were in standard trust form, naming Mrs. Gamble the trustee to the Maryland National Bank account and Carl the trustee to the Equitable Trust Company account. Only Mrs. Gamble's funds were placed in the accounts.

Carl died February 19, 1984, predeceasing Mrs. Gamble. At her death on March 25, 1986, the remaining balance in the Maryland National account was $18,484.98 and the balance in the Equitable account was $32,903.35.

Edgar, executor of Mrs. Gamble's estate, did not list the two bank accounts as assets of the estate. Instead, he withdrew all the funds and placed them in his own account after paying the appropriate estate taxes. The appellees filed a Complaint for Declaratory Judgment in Circuit Court, urging the court to declare that the bank accounts were not Edgar's property by right of survivorship,[1] but were assets of Mrs. Gamble's estate.

There was testimony from three friends and neighbors as to their conversations with Mrs. Gamble, following Carl's death, regarding the disposition of her estate. According to Mignon Powell, Mrs. Gamble told her that everything was supposed to be divided between Edgar and Carl. She also testified that Mrs. Gamble wanted Joanne and Richard to "have their share, but you know, she did have a will, but after Carl died, I think only one name was on the money and she never did get that changed."

---

**1.** Funds in a trust account do not pass by right of survivorship. The money becomes the beneficiary's property at the trustee's death because the trustee holds it in trust for the beneficiary should the latter happen to outlive the trustee. *Milholland v. Whalen,* 89 Md. 212, 218, 43 A. 43 (1899).

Julie Mahady stated that, following Carl's death, "[Mrs. Gamble] really got where she wanted [Carl's] children to have his share. She thought Edgar should have half and Carl's children the other half, the part their father would have gotten." Further testimony elicited from the same witness indicated that Mrs. Gamble realized that, as the accounts stood, Joanne and Richard would probably not get any money, but "she didn't want it that way," and that "[s]he didn't think it was fair that Edgar's grandchildren would get her money when [Carl's children] couldn't." Mrs. Mahady also indicated that Edgar would get upset whenever discussions arose concerning Mrs. Gamble's finances.

The third witness, Patsy Cavanaugh, corroborated Mrs. Mahady's statements regarding Edgar's reaction on several occasions to changing Mrs. Gamble's bank accounts. In one instance in particular "... Edgar got very, very angry with her and threw the clothes in [sic] the floor that she had given him of Carl [sic] and said that he didn't want a GD thing that she had, and he left and didn't come back for about three weeks." Although Mrs. Gamble did not drive, she was physically capable of going to the bank or her lawyer's office, "except that she didn't want Edgar to get mad at her."

The testimony of Edgar, Joanne, and Richard was limited in scope pursuant to the "Dead Man's Statute," Md.Cts. & Jud.Proc.Code Ann. § 9–116. Edgar characterized his mother as "very smart, very self sufficient, ... very independent.... she was the boss of the family." He denied throwing a bank book at his mother or ever discussing her bank accounts. In his testimony, Edgar stated that he considered the money hers until she died, and that she had possession of the passbooks, except on the few occasions when he deposited money for her. Richard and Joanne testified as to the frequency of their visits and their relationship with Mrs. Gamble.

The trial court found that Mrs. Gamble did not intend to create trust accounts, but continuously intended Carl and Edgar to share the balance and, in the event of either son's

death, the children of that son were to take in their father's stead. The judge ruled that the accounts were, therefore, joint accounts. Finding that Mrs. Gamble's gift of the accounts was not perfected due to an uncompleted delivery, the court held that the joint accounts were assets of the estate.

There is only one issue before the Court: whether the two bank accounts in the names of Ethel Gamble, Edgar Barker, and Carl Barker are valid trust accounts which belong to Edgar, or whether the accounts are joint bank accounts and unperfected gifts, and, thus, are assets of the estate.

■■■ Maryland distinguishes between joint bank accounts and joint trust accounts. Joint bank accounts do not contain trust language, and the depositor retains legal and equitable title to the monies. *Whalen v. Milholland,* 89 Md. 199, 43 A. 45 (1899) (*Milholland I*). In order for a donee-beneficiary to inherit there must be a perfected *inter vivos* gift by the donor-decedent. Otherwise, *locus penitentiae* remains in the owner who then retains control and dominion over the funds. 89 Md. at 201, 43 A. 45. In *Milholland I,* the passbook entry read: "Elizabeth O'Neill and Mary Whalen. Joint owners. Payable to the order of either or the survivor." The court held that Mrs. O'Neill did not make a valid and effective gift to Mrs. Whalen, despite the wording "joint owners," because Mrs. O'Neill retained the passbook and there was no effective delivery. The balance in the account was held an asset of the estate. *Milholland I,* 89 Md. at 202, 43 A. 45.

■■■ A trust account[2] does not necessarily contain trust language, either. *Pearre v. Grossnickle,* 139 Md. 274,

---

2. The standard trust form is: "A in trust for self and B, joint owners, subject to the order of either, the balance at the death of either to belong to the survivor." *Hancock v. Savings Bank of Balt.,* 199 Md. 163, 170, 85 A.2d 770 (1952). In this case, both accounts had two beneficiaries and were in the following form: "A in trust for self and B and C joint owners subject to the order of any of them, balance at

279, 115 A. 49 (1921). The donor's act creates the trust, but it is the donor's "intention with which he does the act that is material." *Milholland v. Whalen,* 89 Md. 212, 216, 43 A. 43 (1899) *(Milholland II ).* The general rule regarding trust accounts in Maryland, stemming from *Milholland II* and its progeny, is that a revocable [3] trust account is presumed to exist where there is an unexplained passbook entry containing trust language, "because it indicates an intention to establish a trust; but this may be rebutted." 89 Md. at 216, 43 A. 43. The declaration of a trust transfers legal title to the trustee, and the beneficial interest passes to the *cestui que trust.* 89 Md. at 216, 218, 43 A. 43. If the trust is challenged by an interested party or the estate's administrator, the burden of proof lies with the challenger. Where a confidential relationship can be shown between the donor and the beneficiary, the burden shifts to the beneficiary to show that there was no undue influence. *Coburn v. Shilling,* 138 Md. 177, 199, 113 A. 761 (1921); *Bollack v. Bollack,* 169 Md. 407, 416, 182 A. 317 (1936); *Wenger, Adm. v. Rosinsky,* 232 Md. 43, 50, 192 A.2d 82 (1963).

The passbook entry in *Milholland II* differed from that in *Milholland I:* "Metropolitan Savings Bank, in account with Miss Elizabeth O'Neill. *In trust for herself and Mrs. Mary Whalen,* widow, joint owners, subject to the order of either; the balance at the death of either to belong to the survivor." (Emphasis supplied.) After stating the rule, the court found that Mrs. O'Neill intended to create a trust and that the funds passed to Mrs. Whalen, not by right of survivorship or by an *inter vivos* gift, but because Mrs. O'Neill held

the death of the first dying to belong to the survivors in trust for each other, subject to the order of either of them, balance at the death of either of said survivors to belong to the ultimate survivor."

**3.** Milholland II held that a donor cannot extinguish the trust unless the power to revoke is retained. *Milholland v. Whalen,* 89 Md. at 215, 43 A. 43. *Bierau v. Bohemian Building, etc., Assn.,* 205 Md. 456, 109 A.2d 120 (1954), however, held that the right to withdraw funds is legally equivalent to the power of revocation, and does not affect the validity of the trust. 205 Md. at 462, 468, 109 A.2d 120. *See also, Bollack v. Bollack,* 169 Md. 407, 182 A. 317 (1936).

the money in trust for Mrs. Whalen should the latter happen to outlive her. *Milholland II,* 89 Md. at 218, 43 A. 43.

█ The Maryland cases stemming from *Milholland II* indicate that there are three possible results in a disputed trust account case. First, the trust account may be upheld, and the beneficiary retains the funds. *Milholland II, supra; Bollack v. Bollack, supra; Hancock v. Savings Bank of Balt.,* 199 Md. 163, 85 A.2d 770 (1952) (trust upheld where reasonable and fair, despite confidential relationship, and no evidence presented that donor intended a different result); *Almond v. McAllister,* 202 Md. 411, 96 A.2d 609 (1953) (confidential relationship, but trust reasonable and fair and evidence of intent that survivor get funds); *Bierau v. Bohemian Bldg, etc., Assn, supra; Midler v. Shapiro,* 33 Md.App. 264, 364 A.2d 99 (1976).

Second, the presumption of a valid trust may be successfully rebutted, and the funds will revert to the decedent's estate if no perfected gift was made. The cases in this area generally involve "special trusts" which are created for a specific purpose, and terminate at the donor's death. *Coburn v. Shilling, supra* (donor intended to create account to allow survivor to draw on fund for donor's benefit); *Ragan v. Kelly,* 180 Md. 324, 24 A.2d 289 (1942) (donor intended a convenient method of withdrawals from account); *Shook v. Shook,* 213 Md. 603, 132 A.2d 460 (1957) (donor intended to facilitate settlement of estate); *Shirk v. Suburban Trust Co.,* 248 Md. 114, 235 A.2d 549 (1967); *Ebert v. Ritchey,* 54 Md.App. 388, 458 A.2d 891 (1983).

Last, and least likely, a constructive trust may be imposed where the beneficiary assented to the donor's intent regarding distribution of the monies in the account, but failed to carry out those intentions. *Potts v. Emerick,* 293 Md. 495, 445 A.2d 695 (1982).

The intent of the donor is a factual issue, and is determined at the time the entry in the passbook was made. *Ragan v. Kelly,* 180 Md. at 331, 24 A.2d 289. The case law

generally focuses on the intent of the donor as to the creation of the trust itself; some cases, however, also allude to the intent of the donor as to the *result* of the trust's creation at the time it was created. In *Hancock v. Savings Bank of Balt., supra,* the estate argued that the trust account was created to enable the donee to pay the decedent's hospital bills, and was thus a "special trust" which should have ended at the death of the donor. The court found that the decedent had intended the donee to inherit the former's house, an intention which was not carried out under the will. That intention, however, afforded "a substantial basis for holding that the action of the decedent [in creating the trust] was in furtherance of her own desire and wish." *Hancock v. Savings Bank of Balt.,* 199 Md. at 171, 85 A.2d 770. Similarly, the court in *Almond v. McAllister, supra,* found that the decedent intended to "share up" with the donee and thus intended to make the donee the beneficiary of the trust account. In *Bollack v. Bollack, supra,* the decedent's grandchildren by a son who had predeceased him, attempted to have the trust accounts established with their father's siblings overturned. The court upheld the various trust accounts after finding that it did not appear that the donee "had ever expressed any intention different from that indicated on the cards, or that he had ever intended any other division of his estate than that which they effected." *Bollack v. Bollack,* 169 Md. at 417, 182 A. 317.

In the case *sub judice,* the trial judge erred in finding that the accounts were not trust accounts. Although the language of both bank account passbooks is in trust form, the language in and of itself is not determinative and creates only a rebuttable presumption of a trust. *Milholland II,* 89 Md. at 216, 43 A. 43; *Pearre v. Grossnickle,* 139 Md. at 279, 115 A. 49. The appellees, Joanne and Richard, had the burden of rebutting the presumption or showing that a confidential relationship existed between Edgar and Mrs. Gamble, in which case the appellant, Edgar, would have assumed the burden of showing that there was

no undue influence. *Milholland II,* 89 Md. at 216, 43 A. 43; *Coburn v. Shilling,* 138 Md. at 199, 113 A. 761. The appellees presented no evidence of Mrs. Gamble's intent to create a "special trust," and that is not an issue before this court. Although the appellees introduced evidence of Edgar's relationship with Mrs. Gamble, no confidential relationship was found. Nor was there any evidence that Mrs. Gamble continuously intended, in the event of either son's death, that that son's children would take in their father's stead.

The trial judge's findings of fact will not be disturbed except where they are "clearly contrary to the weight of the evidence." *Shook v. Shook,* 213 Md. at 612, 132 A.2d 460, and cases cited therein. The evidence must be considered, moreover, in the light most favorable to the prevailing party below. *Burroughs Int'l Co. v. Datronics Eng'rs, Inc.,* 254 Md. 327, 337–338, 255 A.2d 341 (1969), *quoting Goodwin v. Lumbermens Mut. Cas. Co.,* 199 Md. 121, 129, 85 A.2d 759 (1952). Viewing the evidence in the light most favorable to Joanne and Richard, we find there is no evidence whatsoever to support the trial court's finding that Mrs. Gamble did not intend to create a trust fund which would result in the disinheritance of Carl's children.

Mrs. Gamble was in her eighties when the two accounts were created. She undoubtedly believed that she would predecease both Carl and Edgar, that Carl and Edgar would each then own half of the monies in the accounts, and that her grandchildren would ultimately inherit any remaining funds from their respective fathers. Mrs. Gamble simply did not anticipate the possibility that either of her sons would predecease her and did not, therefore, make provision for such a contingency. The testimony of all three impartial witnesses clearly showed that it was solely after Carl's death that Mrs. Gamble first realized that only Edgar, and thus Edgar's children, would receive the account monies when she died. She obviously realized that this would be the legal effect of her earlier action in creating the trust accounts as she had done.

Mrs. Gamble thought that it was unfair that Joanne and Richard were no longer eligible to receive any part of the funds, and she wanted Joanne and Richard to have the share their father would have received had he lived. Mrs. Gamble, however, did not change the terms of the two bank accounts, despite her physical and mental ability to do so. Two of the witnesses testified that Edgar would get upset whenever she raised the topic of her finances or changing her bank accounts. On one occasion he allegedly refused to visit her for three weeks, and on another he allegedly threw a bank book at her. Edgar, however, categorically denied emotionally blackmailing his mother, discussing her bank accounts, or throwing a bank book at her. Even if Edgar was not cooperative, Mrs. Gamble had many opportunities in the two years following Carl's death to change the terms of the trust: one of the witnesses had offered to provide transportation for Mrs. Gamble; another witness testified that Mrs. Gamble had indicated she had talked to Joanne about going to the bank; and, Joanne testified that she was willing and able to transport her grandmother.

More importantly, none of the witnesses testified as to Mrs. Gamble's intent when she declared the two trusts with Edgar and Carl. It is only her intention *at that point in time* which is material, *Milholland II*, 89 Md. at 216, 43 A. 43, and not, as appellees would have it, her intention at some later time. By not presenting evidence of Mrs. Gamble's intent at the time the trusts were created as to whether she wanted to create a trust for Edgar and Carl alone or whether she wanted the children of a beneficiary who predeceased her to take the beneficiary's share, the appellees failed to rebut the presumption that it was the intention of the donor to create the two trusts in favor of the donee, Edgar. Furthermore, it is clear that Mrs. Gamble did not intend to create a constructive trust in favor of anyone else. Evidence of Mrs. Gamble's intent following Carl's death was irrelevant, and the trial court clearly erred in finding that the appellees had met their burden of proof.

Mrs. Gamble held the funds in the Maryland National Bank account in trust for Carl and Edgar, should they happen to outlive her. *Milholland II,* 89 Md. at 218, 43 A. 43. At Carl's death, Edgar remained the only beneficiary, and he became the owner of the funds when Mrs. Gamble died. The same result is reached with respect to the Equitable Trust Company account, despite the fact that Carl was the trustee. At Carl's death, Mrs. Gamble and Edgar held the funds in trust for each other,[4] the balance to belong to the survivor. Edgar became owner of the funds in this account at Mrs. Gamble's death as the surviving beneficiary.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEES.

---

4. *See,* footnote 2 and accompanying text.