658 So.2d 1190 (1995)
BREVARD COUNTY, Florida, etc., Appellant,
v.
John C. RAMSEY, et al., Appellees.
No. 94-1127.
District Court of Appeal of Florida, Fifth District.
August 11, 1995.
*1192 Eden Bentley, Asst. County Atty., Melbourne, for appellant.
Leon Stromire of Stromire, Bistline & Miniclier, McDermott & Griffith, Cocoa, for appellees.
PETERSON, Chief Judge.
Brevard County (County) appeals the award of business damages to John C. Ramsey and Peggy N. Ramsey, husband and wife (the Ramseys), in an eminent domain action. We reverse.
The Ramseys acquired a parcel of real property, part of which is the subject of this eminent domain action, on March 28, 1983. On November 15, 1983, the Ramseys incorporated Ramsey Enterprises of Brevard, Inc. (Enterprises). Enterprises has operated a business, known as "John Ramsey's Alignment Service," on the property since the date of incorporation.
The county filed a petition in eminent domain seeking acquisition of part of the property in October 1990, joining the Ramseys but not Enterprises. On March 1, 1991, an order of taking was obtained. The record on appeal does not reflect that any further action took place as to the subject parcel until July 6, 1993. On that date the Ramseys filed a motion to join Enterprises as an indispensable party, and both the Ramseys and Enterprises filed answers. In its answer, Enterprises claimed that it was entitled to damages for the taking because it was the beneficial owner of a portion of the tract purchased by the Ramseys in 1983. An attachment to both answers indicated that a portion of the property originally purchased by the Ramseys was owned by the Ramseys as trustees for Enterprise. The attachment was a single-page document entitled "DECLARATION OF TRUST" that indicates, inter alia, "Dated: November 30, 1983". It is signed by the Ramseys, but is not acknowledged and has never been recorded in the official records of Brevard County.[1]
The declaration recites that the Ramseys are the sole shareholders of Enterprises and
As said shareholders, we hereby state and acknowledge that we hold the following described real property as Trustees for the use and benefit of said corporation, to wit:
A portion of land lying in Section 22, township 23 South, Range 36 East, Brevard County, Florida, more particularly described as follows:
Part of the Southeast 1/4 of the Southeast 1/4 lying east of State Road as described in Deed Book 434, at Page 556, except portion as in Official Records Book 93, Page 6, road right of way; also described on the Property Appraisers Section Map as Block 785 of said section.
Less and except the following described parcel:
A parcel of land lying in Section 22, township 23 South, Range 36 east, Brevard County, Florida; being more particularly described as follows:
Commence at an iron pipe which is 743.3 feet North of the Southeast Corner of section 22, township 23 South, Range 36 East for a point of Beginning; from said point of beginning go West 280.85 feet to a point on the east right of way of State Road No. 3; then northerly along said east right of way lien a distance of 96 feet, thence east 200 feet; thence north and parallel to the east line of State Road No. 3 a distance of 25 feet; thence east a distance of 80.85 feet to an iron pipe set on the east boundary of section 22; thence south a distance of 121 feet to the point of beginning.
This Statement of Trust is intended to indicate that we hold no individual interest in said real property and that any interest that we may have in said real property is solely as Trustee and in no other capacity.
The declaration is silent as to any powers or duties of the Ramseys as trustees and as to the disposition of the trust estate. According *1193 to the Ramseys' brief, it is not known what motivated them to execute this declaration.
In ruling that the Ramseys were entitled to business damages, the trial judge stated:
The corporation is Ramsey and Ramsey, the fee-simple title is Ramsey and Ramsey, the trustee is Ramsey and Ramsey, and in the condemnation, it would seem like if there were some other entity established, a separate entity established that would be an intervening entity, but if all the entities as all of the pieces of this whole, all of the pieces of the whole parcel are owned by Ramsey and Ramsey, it's hard for the court to say that the fact that they split it up for whatever reasons, tax, inheritance, liability, but still and all, Ramsey and Ramsey are the responsible parties and are the beneficial owners of the property.
The trial court declined to rule on the motion to join Enterprises as an indispensable party and suggested that the most appropriate way to address the business damage claim would be for Enterprises to assign its interest to the Ramseys.
The Ramseys followed the court's direction, and the record contains an "assignment of damage claims (business and other)" which recites that the Ramseys are the fee title owners[2] of the real property and are entitled to all compensation for the taking of the parcel either individually or as owners of all of the stock in Enterprises. The assignment then purports to assign all claims for compensation to the Ramseys. An affidavit "in support of business damage claim" also appears in the record, and states that the:
Ramseys executed a Declaration of Trust effective November 30, 1983 ... acknowledging that they held title to the south 293 feet of parcel 170 as trustees for the use and benefit of the corporation. The effect of the declaration was the corporation was treated as the owner of said real property. Pursuant to said declaration the corporation has done the following:
(a) Paid all mortgage payments
(b) Paid all taxes
(c) Paid all insurance premiums
(d) Taken all depreciation on the improvements for tax purposes.
The parties then settled by stipulating to a final judgment that makes an award for the land taken, and for severance and business damages. As part of the settlement the county reserved the right to appeal the Ramseys' entitlement to the business damages.
The county argues that the Ramseys' attempt to create a trust for the benefit of Enterprises failed because the Ramseys did not execute a deed in the presence of two subscribing witnesses as required by section 689.06, Florida Statutes (1993). That section provides:

How Trust Estate Conveyed. 
All grants, conveyances, or assignments of trust or confidence of or in any lands, tenements, or hereditaments, or of any estate or interest therein, shall be by deed signed and delivered, in the presence of two subscribing witnesses, by the party granting, conveying, or assigning, or by his attorney or agent thereunto lawfully authorized, or by last will and testament duly made and executed, or else the same shall be void and of no effect.
The Ramseys counter by citing section 689.05, Florida Statutes (1993):

How Declarations of Trust Proved. 
All declarations and creations of trust and confidence of or in any messuages, lands, tenements or hereditaments shall be manifested and proved by some writing, signed by the party authorized by law to declare or create such trust or confidence, or by his last will and testament, or else they shall be utterly void and of none effect; provided, always, that where any conveyance shall be made of any lands, messuages or tenements by which a trust or confidence shall or may arise or result by the implication or construction of law, or be transferred or extinguished by the act and operation of law, then, and in every such case, such trust or confidence shall be of the like force and effect as the same would have been if this section had not been *1194 made, anything herein contained to the contrary in anywise notwithstanding.
The threshold issue becomes whether the declaration of trust was effective to divest the Ramseys of the equitable interest in the real property so that they could hold the legal title as trustees. If the declaration was effective, the next inquiry must be to determine the nature of Enterprises' interest in the real property adjoining the part taken by condemnation and whether that interest entitles Enterprises to business damages under section 73.071(3)(b), Florida Statutes.

I. VALIDITY OF THE TRUST
We agree with the Ramseys that under the facts of this case two witnesses were not required to create a trust by declaration. Section 689.05, Florida Statutes, a statute of frauds, provides in pertinent part:
... declarations ... and creations ... of trusts ... in any lands ... shall be manifested and proved by some writing, signed by the party authorized by law to declare or create such trust. .. .
Witnesses are not required by the statute when a trust of land is created by written declaration by one authorized by law, in this case the owner, the Ramseys. To prove a trust created under section 689.05, it is not necessary that the writing be a deed or that it be witnessed. All that is necessary is "some writing" which is signed and which manifests an intent to create a trust in the subject land by those having appropriate ownership interests. Our conclusion is consistent with the Restatement Second of Trusts, section 17, which recognizes the creation of a trust by the owner of property who declares that he holds it as trustee for another person. That person may be a corporation. Id. § 116.
The conclusion that a trust in land can be created without the formality of a deed is not changed by section 689.06, Florida Statutes, which provides that the conveyance of a trust estate of land is void unless the transfer is by duly executed will or by deed signed and delivered in the presence of two subscribing witnesses. Most commonly, a trust is created by a transfer of property inter vivos or by will by the owner of the property to another as trustee. William F. Fratcher, Scott on Trusts § 17 at 224 (4th ed. 1988) (Fratcher). The transfer of title to a trustee is the event that brings the trust into existence. 76 Am.Jur.2d Trusts § 52 (1992). And, in order to create a valid trust, there must be an actual conveyance or transfer of the property. Id. If a settlor attempts to transfer real property to a trustee, the requirements of section 689.06 apply. See Flinn v. Van Devere, 502 So.2d 454 (Fla. 3d DCA 1986), rev. denied, 511 So.2d 998 (Fla. 1987) (holding that attempted inter vivos transfer of real property to a trustee merely by a witnessed declaration was void, but failing to cite either section 689.05 or section 689.06).
In the instant case, however, the requirements of section 689.06 were not invoked because the Ramseys did not transfer the real property. And, no transfer of property is necessary when the settlor makes himself trustee. As Fratcher points out:
Declaration of trust. A trust can be created without a transfer of property. The owner of property can, by a declaration of trust, make himself trustee of the property for others. Such a trust is valid even though the settlor receives no consideration for declaring the trust. No transfer of the property is necessary for the creation of such a trust, since the purpose is that the settlor himself shall continue to hold the property, no longer, it is true, for his own benefit, but for the benefit of others. Nothing more than the manifestation of intention to create such a trust is necessary, unless the subject matter of the trust is an interest in land, in which case a writing is required by the Statute of Frauds, or unless the disposition is in substance a testamentary disposition, in which case it is necessary to comply with the formalities required by the Statute of Wills.
Where the owner of property wishes to make himself trustee of the property for another, the simplest method of accomplishing his purpose is to execute an instrument declaring that he holds the property in trust... .
*1195 Fratcher, § 17.1, at 226-228 (footnotes omitted). See also 76 Am.Jur.2d Trusts § 83 (1992) (where there is a declaration of trust and the declarant already owns the property, no transfer of title to a trustee is needed; instead, the declarant ceases to own the property for his or her own benefit, but holds it strictly for the benefit of another). Accordingly, because the Ramseys did not need to transfer title to the property in order to create a trust of their land with themselves as trustee, they did not need to comply with section 689.06, and it was enough that they complied with section 689.05.

II. STATUTE OF USES
The Ramseys' failure to state a purpose of the trust, the duties and powers of the trustee, or consideration, is not a fatal defect. The trust is not, however, classified as an active trust. Restatement (Second) of Trusts (1959) § 46, cmt. a:
If the owner of property declares himself trustee of the property ... for a named person without specifying further the purposes of the trust, the writing sufficiently designates the purpose of the trust since it is a declaration of a passive trust of the property for the intended beneficiary.
A nonactive trust, known as a passive trust, could be affected by the statute of uses so that the use is executed and the legal title is vested in the beneficiary. Id. § 69.
Florida's statute of uses executes a passive trust when a deed of bargain and sale or covenant to stand seized are employed, but it does not mention a declaration of trust. § 689.09, Fla. Stat. (1993). This is consistent with the Restatement (Second) of Trusts:
[A] declaration of trust of a freehold interest in land ... is not executed by the Statute of Uses unless the trust is passive and the requirements for a bargain and sale or a covenant to stand seised are complied with; and, if these requirements are complied with the use or trust thereby created is immediately executed by the Statute of Uses.
Id. § 28 cmt. c. A bargain and sale consists merely of an agreement to transfer supported by consideration or a recital of consideration. James R. Wilson, The Florida Statute of Uses, 21 Fla.L.J. 131, 143 (1947). A covenant to stand seized requires that the instrument be under seal and that the covenantee be closely related to the covenantor either by blood or marriage. Id.
Two other policy considerations may be appropriate relative to the statute of uses. If the statute of uses executed the trust so that the legal title vested in Enterprises, a most undesirable result would be achieved. The legislature's statutory scheme evinces a strict pattern of requiring two subscribing witnesses in the inter vivos and testamentary alienation of real property. §§ 689.01, 689.06, 732.502, Fla. Stat. (1993). If the statute of uses executed the use, the owner of land would be able to circumvent the statute by declaring in an unwitnessed writing that he holds it for the use of another. The statute would then execute the use and vest legal title in the beneficiary of the trust. At least one author recognizes that problem and concludes, "[u]ndoubtedly the legal title to land cannot be thus conveyed." Fratcher § 28.1. The other consideration is that perhaps all trusts are supplied with any absent provisions of duties and powers by Chapter 737, Florida Statutes (1993), making passive trusts extinct unless created pursuant to section 689.09, Florida Statutes (1993).
We conclude that the Ramseys created an inter vivos passive trust that is not executed by the statute of uses, and that the corpus consisted of the real property taken by the county and the contiguous remainder. The Ramseys held the legal title as trustee and Enterprises held an equitable interest as beneficiary as of the date of the taking by the county.

III. THE BUSINESS DAMAGES STATUTE
Section 73.071(3)(b), Florida Statutes (1993), provides:
(3) The jury shall determine solely the amount of compensation to be paid, which compensation shall include:
* * * * * *
(b) Where less than the entire property is sought to be appropriated, any damages to the remainder caused by the taking, including, *1196 when the action is by the Department of Transportation, county, municipality, board, district or other public body for the condemnation of a right-of-way, and the effect of the taking of the property involved may damage or destroy an established business of more than 5 years' standing, owned by the party whose lands are being so taken, located upon adjoining lands owned or held by such party, the probable damages to such business which the denial of the use of the property so taken may reasonably cause; any person claiming the right to recover such special damages shall set forth in his written defenses the nature and extent of such damages... .
(Emphasis added).
Thus, for an award of business damages in a partial taking, the owner or holder of the adjacent land must simultaneously own the business at the time an order of taking is rendered. The question in the instant case, then, is whether the beneficiary of a trust, the subject matter of which is real estate upon which is located a business adjacent to real estate being taken by eminent domain, be regarded as the owner or holder of that real estate so as to be awarded business damages pursuant to section 73.071(3)(b), Florida Statutes (1993). We answer the question in the negative in this case, but in so ruling do not foreclose a different result when the terms of an active trust may warrant a positive answer.
The declaration of trust executed by the Ramseys is silent as to the right of enjoyment of the lands by the beneficiary and the powers of the trustee. Therefore, we must look to chapter 737 to supply the missing provisions. Section 737.401 confers certain statutory powers upon a trustee unless limited by a trust instrument. We find a partial answer to our inquiry in section 737.402(2)(a), which empowers the trustee to hold and retain trust assets until disposition of the assets should be made. The trustee is also empowered to dedicate land to public use in subsection (2)(j) and to defend actions for the protection of trust assets in subsection (2)(z). In fact the powers provided to a trustee under section 737.402 are so broad that it would be entirely inconsistent and in some cases chaotic to allow a trustee and beneficiary to exercise those powers simultaneously. This is consistent with the concept that the trustee retains the legal title to the real estate held in trust. In a trust relationship, the trust beneficiary possesses an equitable ownership in the trust property, while the trustee possesses legal title to the property. 76 Am.Jur.2d Trusts § 1 (1992) citing Restatement (Second) of Trusts § 2 (footnotes omitted).
When property held in trust is taken for public use, the trustee and not the beneficiary should be made a party. 2 Julius L. Sackman, Nichols' The Law of Eminent Domain, § 5.10 (rev. 3d ed. 1995) (Sackman). See also § 73.021(4), Fla. Stat. (1993) ("if a trust estate, the trustee shall be made a defendant without joining the cestui que trust... ."). Although equitable as well as legal rights are protected by the constitution and are property in the constitutional sense, in the case of an express trust the trustee and not the beneficiary is recognized as the owner in eminent domain proceedings and awarded compensation. Sackman. The compensation in such case takes the place of the land, and is held subject to the same trust. Id. § 5.12. Because the trustee in condemnation actions in general, and in Florida in particular, is considered the person with the interest in the land, we hold that absent any circumstances justifying a contrary result, the beneficiary of a trust of land does not "own" or "hold" the land for purposes of section 73.071(3)(b).

IV. TREATING THE RAMSEYS AND THEIR CORPORATION AS ONE OR PIERCING THE CORPORATE VEIL

It is basic hornbook law that "corporate property is vested in the corporation itself, and not in the individual stockholders, who have neither legal nor equitable title in the corporate property."
In re Miner, 177 B.R. 104 (Bankr.N.D.Fla. 1994) citing, 8 Fla.Jur.2d Business Relationships § 10 (19__); Brown v. Florida S. Ry. Co., 19 Fla. 472 (1882); Blanchard v. Commonwealth Oil Co., 294 F.2d 834 (5th Cir.1961).
In Soclof v. State Road Department, 169 So.2d 510 (Fla. 1st DCA 1964), an attempt *1197 was made to require the state to pay business damages to shareholders of a close corporation. The Soclofs owned a parcel of land on which they operated a business. Thereafter they incorporated the business as Pensacola Junk Company, Inc., and orally leased the land to the corporation on a month-to-month basis. Later, the Soclofs transferred 35% of the stock to other members of their family. In their answer to the eminent domain petition, the Soclofs claimed they were entitled to Pensacola's business damages because they were its shareholders.
Regarding the Soclofs' claim the court stated:
Appellants alternatively contend ... they, as majority stockholders, are entitled to be compensated for such damages. It is our conclusion that this contention is without merit. Appellants have seen fit to permit the corporation which they control to occupy their property as a tenant at will without legal right to occupy the property on more than a month to month basis. They did not see fit to enter into a written lease for a term of years with the corporation, thereby giving it some degree of protection against the eventuality which arose as a result of the institution of this proceeding. A substantial portion of the capital stock of the corporation is owned by persons who are not parties to this cause. Although the corporate veil may be pierced or removed when necessary in order to prevent the corporation from being used for the perpetration of fraud or wrongdoing, such will not be done in considering the rights of the corporation in a legitimate commercial transaction. We find no basis by which the trial court would have been justified in permitting appellants, even though they may be majority stockholders, to claim and receive compensation for the damages to the corporate business in which they are interested.
Id. at 512 (footnote omitted).
As in Soclof, the Ramseys have not shown any reason why the corporate veil should be disregarded. Certainly, nothing in section 73.071(3)(b) requires it. Since that statute does not make any such provision, the Ramseys, neither in their own right nor through Enterprises, are entitled to business damages. Although it is true that all roads ultimately lead to the Ramseys, it is not unfair to deny them business damages. They chose to incorporate Enterprises, most likely to protect their land and other assets from claimants against Enterprises.[3] That protection is and was much to their benefit and there is nothing unfair about the fact that in this instance the corporate veil does not operate affirmatively to their advantage. There are both advantages and disadvantages to the choice of the form made with which to conduct business, and, once chosen, the disadvantages cannot be ignored in order to eliminate unintended results.
We quash that portion of the final judgment awarding business damages.
REVERSED IN PART.
DAUKSCH, J., concurs.
W. SHARP, J., dissents, with opinion.
W. SHARP, Judge, dissenting.
Although I concur with portions of the majority opinion, I must respectfully dissent to the conclusion that Enterprises (and hence the Ramseys[1]) is not entitled to damages under section 73.071(3)(b).
The Ramseys are the sole shareholders of Ramsey Enterprises of Brevard, Inc. (Enterprises). Enterprises operated a business on the property which was owned by the Ramseys. In November of 1983, the Ramseys executed a Declaration of Trust which provided that the Ramseys, as settlors of the trust, held the property as trustees for Enterprises, the beneficiary of the trust. The Declaration of Trust contained a legal description of the property, but was not witnessed. I concur with the majority opinion *1198 that this document created a valid inter vivos, passive trust.[2] However, I disagree that the Statute of Uses did not execute this trust in favor of Enterprises. In my view, the majority opinion is faulty in its analysis of the transfer of realty, and it misinterprets the Statute of Uses.[3]
In the early development of trust law in England, there were two classes of trusts, which equate to the modern day active and passive trusts. Passive trusts were called "uses,"[4] and prior to 1535 uses were the more important class of trusts.[5] Bogert, Law of Trusts, section 46. Due to strict limitations at common law and the burdens which fell upon feudal landowners, it became common practice to convey realty to one person for the use of another. 56 Fla.Jur.2d, Trusts section 3. The person receiving the use became, for all practical purposes, the actual owner, although he was not the legal owner. Id.
For many years, uses and trusts existed as honorary obligations but had no legal standing. Bogert, section 4. They became subject to serious injustices and frauds which resulted in the enactment of the Statute of Uses in 1535. The purpose of this statute was to abolish uses by giving the beneficiary of the use the entire legal estate. Id; 56 Fla.Jur.2d Trusts, section 3. After passage of the Statute of Uses, all uses were called trusts and were composed of the old active trusts. Id, section 5 at 13. Thus, by definition, the Statute of Uses refers to passive trusts because a passive trust is the modern day equivalent of a use. Active trusts, and those arising by operation of law (constructive and resulting trusts) are not executed by the Statute of Uses. Omwake v. Omwake, 70 So.2d 565 (Fla. 1954). See also Rentz v. Polk, 267 S.C. 359, 228 S.E.2d 106 (1976); Mesce v. Gradone, 1 N.J. 159, 62 A.2d 394 (1948); Greer v. United States, 448 F.2d 937 (4th Cir.1971).
The modified, Florida version of the Statute of Uses was discussed by the Florida Supreme Court in Chase Federal S & L v. Schreiber, 479 So.2d 90, 96-97 (Fla. 1985), cert. denied, 476 U.S. 1160, 106 S.Ct. 2282, 90 L.Ed.2d 723 (1986) where it was explained that:
The Statute of Uses was enacted in 1535 to remedy the problems caused by dual legal and equitable ownership of land. Equitable ownership had arisen as a means of avoiding the legal requirements of land transfer and the feudal incidents of legal land ownership. The statute provided that anyone with beneficial ownership of land should henceforth be deemed to be the legal owner. After the enactment of the statute, the common-law courts began to recognize the ownership interests of beneficiaries of uses, treating them as legal title holders... . Two methods of transferring uses, that is, equitable ownership interests, previously recognized in the chancery court, were the "bargain and sale" and the "covenant to stand seized to the use of another." After the enactment of the statute, these two conveyancing methods came to be recognized as valid in the law courts and became the most commonly used forms of deeds. (emphasis added)
*1199 The Statute of Uses in a modified form has been codified in Florida as section 689.09.[6] Where the Statute of Uses operates, both the legal and equitable estates are vested in the recipient. Vincent v. Hines, 79 Fla. 564, 84 So. 614 (1920). Where a passive trust is created, the Statute of Uses executes the trust and the effect is to vest both legal and equitable estates in the beneficiaries of the trust. Elvins v. Seestedt, 141 Fla. 266, 193 So. 54 (1940); Hamilton v. Flowers, 134 Fla. 328, 183 So. 811 (1938). See also McGriff v. McGill, 62 So.2d 28 (Fla. 1952). As noted in in Carver v. United States, 188 Ct.Cl. 202, 412 F.2d 233 (1969):
The law in Florida is clear and unequivocal. Where a dry, passive trust of property has been created, the Florida Statute of Uses, Florida Statutes, s. 689.09, has been held to nullify the trust and to vest both the legal and equitable title in the designated beneficiary or beneficiaries. (emphasis added)
The legal estate does not vest in the trustee because the Statute of Uses executes the legal estate to vest it immediately in the beneficiary. Penney v. White, 594 S.W.2d 632 (Mo. App. 1980). That is, the beneficiary becomes "seized" of the legal estate when the statute executes the trust. Elvins. Declarations of trusts execute the Statute of Uses. See, e.g., Sheridan v. Coughlin, 352 Pa. 226, 42 A.2d 618 (1945).
Section 689.05 provides that declarations of trust are valid if they are "manifested and proved by some writing, signed by the party authorized by law to declare or create such trust." It does not require the document to be witnessed to be effective. Where a document meets the requirements of section 689.05, it meets the formalities for conveyancing property and nothing further is required. See Zuckerman v. Alter, 615 So.2d 661, 663 (Fla. 1993). Zuckerman noted that the formalities for conveyancing property are different in sections 689.01 (how real estate is conveyed) and 689.05 (how declarations of trust are proved). See also, Clement v. Charlotte Hospital Ass'n Inc., 137 So.2d 615, 617 (Fla. 2d DCA 1962) (interests transferred by Statute of Uses are as effective as those passed by deed). The Declaration of Trust here meets the statutory requirements and it is sufficient to transfer the estate under Florida law.[7]
Because a valid passive trust was created with Enterprises as the beneficiary under a Declaration of Trust, the Statute of Uses executed the trust and passed legal title of the property to Enterprises. Consequently, Enterprises was the owner at the time of these proceedings and is entitled to damages under section 73.071(3)(b).[8] The trial court's ruling that the Ramseys, as assignees of the damage claim, were entitled to business damages was correct.
NOTES
[1] The record does not indicate when the Ramseys actually signed the document nor whether the county ever inquired.
[2] The assignment does not indicate whether the Ramseys hold title as Trustees or individuals.
[3] Their brief asserts that they intentionally chose to refrain from granting a lease to Enterprises in order to escape payment of sales taxes on the commercial rent.
[1] Enterprises assigned all of its damage claims to the Ramseys subsequent to the inception of this lawsuit.
[2] A trust to merely hold title is a passive trust which is executed by the Statute of Uses. In re Bergland's Estate, 372 Pa. 1, 92 A.2d 207 (1952).
[3] After the Statute of Uses was enacted, there were two methods of transferring title to land: (a) by livery of seisin (deed); and (b) by transactions which raised a use in favor of the transferee (active trust). 19 Fla.Jur.2d, Deeds, section 5 at 150. An interest transferred by the Statute of Uses is as effective as one passed by deed. Clement v. Charlotte Hospital Ass'n. Inc., 137 So.2d 615, 617 (Fla. 2d DCA 1962). In some states, the statute of uses has been held not to apply to uses created by devise. Blake v. O'Neal, 63 W. Va. 483, 61 S.E. 410 (1908). Further, the term "covenant to stand seized" refers to uses where the owner of a freehold estate covenants to hold legal title in trust for the use of another. McDaniel v. Connor, 206 S.C. 96, 33 S.E.2d 75 (1945).
[4] Uses were originally introduced into England shortly after the Norman Conquest in 1066 A.D. and were patterned after German law; they were not based on Roman Law and did not exist in civil law countries until recently. Bogert, Law of Trusts, sections 3 and 4.
[5] The terms "use" and "trust" are also used to distinguish different aspects of the same subject: use refers to the beneficial interest of the estate, while trust refers to nominal (legal) ownership. Black's Law Dictionary at 1382.
[6] Section 689.09 states:

By deed of bargain and sale, or by deed of lease and release, or of covenant to stand seized to the use of any other person, or by deed operating by way of covenant to stand seized to the use of another person, of or in any lands or tenements in this state, the possession of the bargainor, releasor or covenantor shall be deemed and adjudged to be transferred to the bargainee releasee or person entitled to the use as perfectly as if such bargainee, releasee or person entitled to the use had been enfeoffed by livery of seizin of the land conveyed by such deed of bargain and sale, release or covenant to stand seized; provided, that livery of seizin can be lawfully made of the lands or tenements at the time of the execution of the said deeds or any of them. (emphasis added)
[7] A valid declaration of trust passes legal title to the trustee and beneficial title to the cestui que trust. Barker v. Aiello, 84 Md. App. 629, 581 A.2d 462 (1990), cert. denied, 322 Md. 130, 586 A.2d 13 (1991). And as noted in Bogert, Law of Trusts, section 46, both the original statute of uses and its successors have been held by American courts to automatically transfer title to the beneficiary where a passive trust has been determined to exist.
[8] Specifically, section 73.071(3)(b) provides, in part:

Where less than the entire property is sought to be appropriated, any damages to the remainder caused by the taking ... owned by the party whose lands are being so taken, located upon adjoining lands owned or held by such party, the probable damages to such business which the denial of the use of the property so taken may reasonably cause; ... . (emphasis added)