In re Bernadine L. BOSONETTO, Debtor.

Gregory K. Crews, Trustee, Plaintiff,

v.

Bernadine L. Bosonetto and Lolita M. Balch, Defendants.

Bankruptcy No. 01–00649–3P7. Adversary No. 01–0078.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 12, 2001.

Richard R. Thames, Jacksonville, Florida, for plaintiff.

Armistead W. Ellis, Daytona Beach, Florida, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon (i) the Complaint filed by Plaintiff, Gregory K. Crews, Trustee, seeking to avoid the fraudulent transfer of the Debtor's interest in property pursuant to 11 U.S.C. § 544(b), and (ii) the Trustee's objection to the Debtor's claim of exemption for her homestead property. A trial of these matters was held on September 13, 2001 and the parties were directed to submit a proposed order, findings of fact, and conclusions of law to this Court by October 23, 2001. Plaintiff's attorney complied but Defendants' attorney never submitted such documents to this Court. The Court does not penalize the Defendant for this default. Rather, this Court bases these Findings of Fact and Conclusions of Law on the evidence presented and the law this Court deems to be proper.

### FINDINGS OF FACT

1. The debtor in the main case, Defendant Bernadine L. Bosonetto, is an 89 year old widow who formerly resided in West Bloomfield, Michigan (T15).

2. In 1994, this Defendant was sued by R. Celstia Burnett for injuries she sustained while visiting this Defendant's property (T22).

3. In 1995, this Defendant, who was then known as Bernadine Bruner, sold her home in Michigan for $320,000 (T16). She received

$60,000 cash and held a contract for deed for the balance (T16).

4.  In August of 1997, she established the Bernadine L. Bruner Revocable Living Trust (Trust) and conveyed to it all of her tangible and intangible property "even though record ownership or title, in some instances, may presently or in the future, be registered in my individual name, in which event such record ownership shall hereafter be deemed held in trust even though such trusteeship remains undisclosed (P22)." The contract for deed from the sale of her property was specifically assigned to the Trust (P22).

5.  She remarried in July of 1998, and thereafter was known as Bernadine L. Bosonetto (T20). The name of the Trust was amended on November 3, 1998(P22).

6.  In September of 1998, Defendant Bosonetto received the balance of the sum due under the contract for deed. The proceeds were invested as follows:

| | |
|---|---|
| $100,000.00 | Mutual Life Insurance Co. Policy #1075589 |
| $ 25,000.00 | Mutual Life Insurance Co. Policy #1080037 |
| $ 85,000.00 | Putnam High Yield Trust II |
| $ 28,349.94 | George Putnam Fund of Boston CL–B |

(P5–P8)

7.  Title to each of the Putnam accounts was held by Bernadine L. Bosonetto, Trustee (P7–8).

8.  A jury trial of the Burnett personal injury action took place in February of 1999, and on February 25, 1999, the Circuit Court for Oakland County, Michigan entered a final judgment in favor of Burnett and against Defendant Bosonetto in the amount of $161,199.36, including costs (P4).

9.  Defendant Bosonetto moved for a judgment notwithstanding the jury's verdict and for a new trial (T40). The motion was denied during the Spring of 1999(T28). However, on September 7, 2001, the Michigan appellate court reversed and remanded for new trial due to a flaw in the trial court's jury instruction (See Doc. No. 29, exb. B).[1]

10. While the post-trial motions were pending, Defendant Bosonetto liquidated all of her investments (incurring over $18,194 in penalties for doing so) (P5, 6, 7 and 8) and purchased a two-story, 3,200 + square foot home located at 15 River Ridge Trail, Ormond Beach, Florida (Florida property), for $248,000 cash (P13 and 25). Title to the home was taken in the name of Bernadine L. Bosonetto and Lolita L. Balch, Defendant Bosonetto's daughter, as joint tenants with right of survivorship (P19).

11. Defendant Balch gave no consideration for her interest in the Florida property (T31).

12. The purchase of the Florida property virtually depleted Defendant Bosonetto's cash and savings (T35).

13. Defendant Bosonetto receives $1,000 per month in social security benefits and $62.40 per month in retirement benefits (T35). Defendant Bosonetto's monthly expenses average $1,435.40 (P14).

14. Real estate taxes for the Florida property are approximately $4,100 per year (T24).

---

**1.** At trial, Defendant initially stated that the effect of this ruling was that "there is no valid claim that this particular Plaintiff has any longer pending against the Debtor." The Plaintiff alleges that the only effect of the reversal is that the judgment is now a unliquidated claim. Defendant did not dispute this assertion at trial.

406

15. Defendant Bosonetto has less than $1,400 in furniture to furnish the 3,200 square foot home (P14).

16. The Michigan judgment was domesticated in Florida on or about December 28, 1999(P26).

17. On January 29, 2001, Defendant Bosonetto filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (P14). Plaintiff Gregory K. Crews was appointed Trustee.

18. On March 8, 2001, the Plaintiff filed an objection to the Defendant Bosonetto's claim of exemption for the Florida property, and on March 9, 2001, initiated this adversary proceeding seeking (i) to avoid the purchase of the Florida property as a fraudulent transfer; and (ii) to avoid the transfer of the 50% interest and right of survivorship interest in the property to Defendant Balch. The trial of the adversary proceeding was consolidated with the trial of the objection to exemption.

19. At the inception of the trial, the Plaintiff announced that he was abandoning the fraudulent conversion claim related to Defendant Bosonetto's interest in the homestead property in light of the Florida Supreme Court's decision in *Havoco of America, Ltd. v. Hill,* 790 So.2d 1018 (Fla.2001), leaving only (i) the fraudulent transfer claims against Defendant Balch and (ii) the objection to exemption to be litigated.

## ANALYSIS

1. *Whether the property is owned by the Trust and if so whether a trust may claim homestead property as exempt.*

■ The Plaintiff argues that the Florida property is owned by Defendant Bosonetto's trust and that trusts cannot claim homestead property as exempt. Plaintiff notes that the monies which were used to purchase the Florida property came from the proceeds of the contract for deed which was owned by the Trust and that these proceeds were then invested. Those investments evidently financed the purchase of the Florida property.

■ Defendant Bosonetto established the Trust in 1997 and conveyed all of her tangible and intangible property to it "even though record ownership or title, in some instances, may presently or in the future, be registered in my individual name, in which event such record ownership shall hereafter be deemed held in trust even though such trusteeship remains undisclosed (P22)." The contract for deed was specifically assigned to the Trust (P22). This Court notes that a trust may own real property under Florida law. Fl.Stat.Ch. 689.

Thus, Plaintiff argues that by the express terms of the Trust, the Florida property is owned by the Trust outright or, alternatively, under a resulting trust. *See e.g. Brevard County v. Ramsey,* 658 So.2d 1190 (Fla. 5th DCA 1995) (execution of deed between grantor of trust and self is not necessary where separate written declaration of trust exists).

As noted, the Plaintiff argues that a Trust cannot claim a homestead exemption. The Florida Constitution provides the homestead exemption to property owned by *a natural person:*

(a) There shall be exempt from forced sale under process of any Court ... the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of one hun-

dred sixty acres of contiguous land and improvements thereon . . .

Art. X, § 4, Fla. Const.

This Court finds that the Trust does own the Florida property by the express terms of the Trust or, alternatively, under a resulting trust and because a trust is not a natural person, Defendant Bosonetto may not claim the Florida property is covered by the homestead exemption.

## 2. Whether the transfer of the 50% interest and survivorship interest to Defendant Balch may be avoided as a fraudulent transfer.

■ The Complaint also seeks to avoid, as a fraudulent transfer, the conveyance of the 50% interest and the right of survivorship interest in the property to Lolita M. Balch, Debtor's daughter.

Plaintiff, a trustee, may avoid any transfer "of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim . . ." 11 U.S.C. § 544(b)(1).[2] "Applicable law" in this sense is the substantive fraudulent transfer law of the forum state. *In re Davis (Crews v. Carwile)*, 138 B.R. 106, 108 (Bankr.M.D.Fla.1992).

In Florida, a transfer made with actual intent to hinder, delay or defraud creditors, or which is constructively fraudulent, may be avoided by a present or future creditor:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debtors beyond his or her ability to pay a they became due.

Fl.Stat.Ch. 726.105(1).

The statute then sets forth a non-exclusive list of factors, traditionally known as "badges of fraud," to be considered by the Court in determining actual intent:

(2) In determining actual intent under paragraph (1)(a), consideration may be given, among other factors, to whether:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

---

2. Section 544(b), as opposed to § 548(a)(1)(A), is the relevant statute because the liquidation of the non-exempt bank ac-

counts and subsequent purchase of the Florida homestead took place more than one year prior to the petition date.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation was incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fl.Stat.Ch. 726.105(2).

A transfer which is not accompanied by adequate consideration may also be avoided by a present creditor pursuant to § 726.106, Florida Statutes, regardless of intent:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Fl.Stat.Ch. 726.106(1).

The Plaintiff argues that under either of the above statutes, the transfers from Defendant Bosonetto to her daughter may be avoided because:

(1) The transfer was to Defendant Bosonetto's daughter, an insider;

(2) The liquidation of the investments and purchase of the Florida property took place almost immediately after the jury rendered its verdict and after the motion to set aside the verdict was denied (T40);

(3) The transfer was of substantially all of the Defendant Bosonetto's assets (T35). As Plaintiff notes, Defendant Bosonetto liquidated her entire investment portfolio even though she had purchased the investments a mere eight months prior, and incurred over $18,194 in penalties for making the early withdrawals (P5, P8). Plaintiff also notes that the liquidation of Defendant Bosonetto's portfolio and subsequent purchase of the Florida property left her with no money to live on and that after the purchase her monthly expenses actually exceeded her monthly income by over $373 (T35–36).

(4) Defendant Bosonetto absconded. Plaintiff argues that even though Defendant Bosonetto was a life-long resident of Michigan and her family and friends reside there she chose to hastily liquidate her investments and move to Florida once faced with the judgment against her (T15);

(5) Defendant Balch gave no consideration for her interests in Defendant Bosonetto's Florida property (T45) and thus Defendant Bosonetto did not receive reasonably equivalent value in exchange for the transfer;

(6) The purchase of the Florida Property and transfer of the various interests in the property to Defendant Balch left Defendant Bosonetto insolvent with an inability to pay her normal monthly debts as they became due. As noted, according to her bankruptcy schedules, Defendant Bosonetto receives $1,062.40 in monthly income, and has monthly expenses of $1,435.40 (P14);

(7) The timing of the transfer and subsequent purchase of the Florida property is evidence of an intent to hinder, delay and defraud creditors. Plaintiff notes that not only did Defendant Bosonetto incur substantial penalties for making early withdrawals from her investments, she

spent less than one week selecting the home, (T30) and the home purchase transaction closed less than two weeks after contracting. Thus, the Plaintiff argues that the relatively short time period between the liquidation of the investments and the closing of the transaction suggests a sense of urgency in placing non-exempt assets beyond the reach of creditors; and

(8) The size of the Florida property exceeds the reasonable needs of Defendant Bosonetto. Plaintiff notes that the Florida property is a 3,200 square foot home with a two-car garage (P24, P25) even though Debtor has no car (T34) and only has $1,400 in furniture to furnish the home. Her furniture consists of a dining room table and chairs, a chest of drawers, a bedroom suite, television and recliner (P14, T21).

This Court finds that all of the essential elements of a fraudulent transfer have been proven and the transfer of the interests in favor of Defendant Balch shall be avoided pursuant to § 726.105, Florida

Statutes. Additionally, Plaintiff may sell the subject property to realize the value of the fraudulently transferred assets for the estate.[3] *In re Englander,* 95 F.3d 1028 (11th Cir.1996) (homestead property may be sold to realize the value of the non-exempt portion).

### Conclusion

The Trustee is entitled to prevail on both the objection to exemption and the Complaint to avoid the fraudulent transfer to Defendant Balch.

The Court will enter a separate order sustaining the Trustee's objection to the Debtor's claim of exemptions and a judgment avoiding the Debtor's transfer of an interest in property to Defendant Balch.

---

**3.** Pursuant to 11 U.S.C. § 522(g), a debtor may not exempt property which is recovered as a fraudulent transfer. The reversal converted a liquidated claim into an unliquidated claim.